IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MOONSCOOP SAS, et al. | ) Case 1:09-CV-01885-JG |
| Plaintiffs, | ) JUDGE JAMES S. GWIN |
| v. | ) |
| AMERICAN GREETINGS CORPORATION, et al. | ) **AMERICAN GREETINGS CORPORATION AND THOSE CHARACTERS FROM CLEVELAND, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON MOONSCOOP SAS' SECOND AMENDED COMPLAINT** |
| Defendants. | ) |

## INTRODUCTION

In its Opposition to American Greetings' Motion for Summary Judgment, MoonScoop does <u>not</u> contest the following dispositive facts: (1) MoonScoop understood that in order for Cookie Jar to relinquish all the rights Cookie Jar had under the 2001 License Agreement with American Greetings, Cookie Jar had to be paid 20% of the cash proceeds from the closing of the MoonScoop Term Sheet on or before June 7, 2009; (2) MoonScoop was <u>not</u> in a position to actually pay American Greetings the cash purchase price on or before June 7, 2009; (3) Cookie Jar had <u>no</u> rights or interest in the actual Properties to be transferred by American Greetings to MoonScoop under the MoonScoop Term Sheet; (4) MoonScoop did <u>not</u> fulfill the express conditions precedent to closing; and (5) American Greetings told MoonScoop that MoonScoop had to actually pay the cash purchase price proceeds to American Greetings on or before June 7, 2009 to keep the deal alive.

Admitting these fundamental facts—which are fatal to MoonScoop's claims for several independently sufficient reasons—MoonScoop makes several fanciful and incorrect legal conclusions in an attempt to avoid the necessary legal consequences of these admitted facts. However, as shown in American Greetings' prior briefs supporting its motion for summary judgment and opposing MoonScoop's cross motion, the necessary legal consequences of each of these dispositive facts is that American Greetings is entitled to judgment as a matter of law on the claims in MoonScoop's Second Amended Complaint.

I. **MOONSCOOP FAILED TO PAY THE CASH BY THE DROP DEAD JUNE 7, 2009 CLOSING DATE.**

MoonScoop does not dispute that both the MoonScoop Term Sheet and the Cookie Jar Letter Agreement expressly and unambiguously required closing and payment to Cookie Jar <u>no later than 75 days</u> after the execution of the term sheet (*i.e.* June 7, 2009), or the right to drag Cookie Jar would expire. (*See* deposition excerpts at page 4 of American Greetings' Opp. Br., Dckt. No. 103). MoonScoop claims that it did not have to actually perform because Cookie Jar did not consent to the relinquishment of Cookie Jar's contractual rights to serve as the licensing agent for Strawberry Shortcake prior to closing of the MoonScoop Term Sheet. However, MoonScoop's timing is backwards.

Under the plain and unambiguous terms of the relevant agreements, Cookie Jar's rights would be relinquished as a matter of a pre-existing contract (the Cookie Jar Letter Agreement) after the actual payment of the cash to American Greetings due at closing, which would enable American Greetings to pay 20% of this cash to Cookie Jar, on or before June 7, 2009. Thus, under the plain and unambiguous terms of the parties' contracts, it was MoonScoop's failure to timely pay the funds that prevented the Cookie Jar drag along. *See* RESTATEMENT (SECOND) CONTRACTS § 238, Illustration 3. For this reason alone, American Greetings, and not MoonScoop, is entitled to Summary Judgment.

II. **IT IS NOT DISPUTED THAT MOONSCOOP WAS NOT "READY, WILLING AND ABLE" TO CLOSE ON THE MOONSCOOP TERM SHEET ON JUNE 7, 2009.**

Second, as a matter of law, MoonScoop was not "ready, willing and able" to perform on June 7, 2009 as required under the MoonScoop Term Sheet. Indeed, there

3

is no genuine issue of material fact that MoonScoop could **not** have fully performed on June 7, 2009.

Even under the cases cited by MoonScoop at page 18 of its Opposition Brief, where a buyer is relieved from actual tender, it must still show that it was <u>fully able to pay within the terms specified by the contract</u>.[1] Here, in stark contrast, it remains <u>undisputed</u> that even if MoonScoop allegedly was finally "willing" to pay the $95,000,000 a few minutes before midnight on Sunday, June 7, 2009, <u>it simply was not physically in a position to do so</u>.

In short, MoonScoop admits that its financing commitment from GTCR was wholly contingent on MoonScoop and Classic reaching a deal satisfactory to Classic and GTCR under which MoonScoop would transfer virtually the entire equity in the Properties to Classic immediately after the closing, and MoonScoop admits that it did <u>not</u> even have the access to the cash or the ability to close on the Term Sheet until after that agreement was reached. (Vaturi Depo. at pp. 132, 157, excerpts attached at Dckt. No. 88-5). MoonScoop also admits that its negotiations with Classic and GTCR did not conclude until around just a few minutes before midnight—11:48 p.m.—on Sunday, June 7, 2009, and that this was the first time it actually had access to financing to close on the Term Sheet. (Vaturi Depo. at p. 280).

Tellingly, MoonScoop also admits it had <u>no knowledge of any plans or ability on its part to actually transfer the funds</u> to American Greetings after 11:48 p.m. on Sunday

---

[1] To be clear, as shown in American Greetings prior briefs and here, MoonScoop absolutely was <u>not</u> relieved of its obligation to actually pay the funds on or before June 7, 2009.

4

night, June 7, 2009.  (Vaturi Depo. at pp. 73, 79).[2]  Thus, regardless of its alleged changed intentions at 11:48 p.m. on June 7, 2009, it remains undisputed that <u>MoonScoop was not "able" to perform under the express terms of the Term Sheet because it could not have physically transferred the cash before midnight on Sunday, June 7, 2009, as required</u>.  For this independent and undisputed reason, under the clear and unambiguous terms of the MoonScoop Term Sheet, American Greetings, and not MoonScoop, is entitled to summary judgment.

### III. AMERICAN GREETINGS STOOD READY, WILLING AND ABLE TO PERFORM ON JUNE 7, 2009.

In none of its briefs does MoonScoop challenge the dispositive facts that: (1) American Greetings, and <u>not</u> Cookie Jar, owned the intellectual property rights (all of the trademarks and copyrights) to Strawberry Shortcake and Care Bears that were to be transferred to MoonScoop; and (2) that Cookie Jar's only interest consisted of contract rights under the License Agreement—and this interest <u>explicitly and by its own terms was **not** an ownership interest</u> in the Strawberry Shortcake property itself.  Nor does MoonScoop ever challenge the legal conclusion that, because Cookie Jar's License Agreement was not an ownership interest in the Property, if American Greetings (even improperly) terminated the License Agreement, Cookie Jar would <u>not</u> have a claim against the Properties themselves.

As with American Greetings' first two arguments above, these facts completely dispose of all of MoonScoop's claims because, as a matter of law, the "claims" in

---

[2] In addition, MoonScoop <u>admits</u> that it did not indicate to American Greetings that MoonScoop would be willing to close the Term Sheet without a new long form contract until MoonScoop's 11:48 p.m. e-mail, thus leaving American Greetings no time to make arrangements to transfer 20% of the cash to Cookie Jar before the midnight deadline even in the event MoonScoop had actually paid the cash before midnight.  (Vaturi Depo. at pp. 197, 280).

5

Cookie Jar's May 6, 2009 lawsuit could not and did <u>not</u> affect MoonScoop's ability to receive ownership of the Properties, including all rights to serve as licensing agent for the Properties, "free and clear of all liens, claims and security interests." MoonScoop's unsupported speculation on pages 16-17 of its opposition brief that Cookie Jar could have interfered with MoonScoop's exploitation of the Properties post-closing is nonsense. <u>It is an undisputed matter of law that because Cookie Jar had no legal rights to the Properties, it had no legal claim to interrupt MoonScoop's exploitation of the Properties post-closing, even if American Greetings improperly terminated the License Agreement</u>. *See In re: Particle Drilling Technologies, Inc.*, 2009 Bankr. LEXIS 2151, *7-8 (Bankr. S.D. Tex. July 29, 2009) ("The property doctrine of 'covenants running with the land' applies only to real property*. . . .* [the plaintiff licensee] cites no authorities that support its contention that [its] royalty rights attach to the patents in a manner that subjects future transferees to its rights"). MoonScoop does not cite a single case to dispute the relevant law.

In short, as explained in American Greetings' opposition brief, Cookie Jar's May 6, 2009 Complaint filed in State Court in New York <u>did not (and could not) raise a claim that would "run with" the Properties themselves</u>. Indeed, Cookie Jar did <u>not</u> attempt to enjoin American Greetings from closing on the MoonScoop Term Sheet on June 7, 2009 and terminating the License Agreement.

Further, as explained in American Greetings prior briefs, if Cookie Jar would have been ultimately successful in somehow showing that American Greetings' termination of the License Agreement was improper, as a matter of law, that action would <u>not</u> have affected the already transferred Properties, nor would any claim by

6

Cookie Jar that its match rights were somehow violated by American Greetings. If successful in that action, Cookie Jar's only potentially viable claim would have been against American Greetings for breach of the July 20, 2008 Cookie Jar Letter Agreement and for allegedly improperly terminating the License Agreement; and Cookie Jar's only potentially viable remedy for these claims would have been for money damages.

Indeed, Cookie Jar has <u>never</u> sought to compel American Greetings to sell the Properties to it, nor could Cookie Jar raise a viable claim for such relief under any legal theory. In fact, in Cookie Jar's opposition to American Greetings' motion for summary judgment on Cookie Jar's counterclaims in Case No. 09-1056, it is clear that Cookie Jar is <u>not</u> seeking any rights in the Properties themselves due to any alleged breach of Cookie Jar's match rights under the Cookie Jar Letter Agreement, but instead is seeking monetary damages. (*See* Cookie Jar Opp. at p. 18, Case No. 09-1056, Dckt. No. 67). Thus, despite MoonScoop's factually and legally unsupported rhetoric to the contrary, there could be <u>no</u> claim by Cookie Jar against the Properties themselves that would restrain MoonScoop's ability, post-closing, to exploit the Properties as it saw fit. MoonScoop's unsupported position is dead wrong, as a matter of uncontested law.

Indeed, to the extent MoonScoop remained a party to Cookie Jar's tort and conspiracy claims after the closing, these claims would <u>not</u> have hindered MoonScoop's ability to fully exploit the Properties as it saw fit, and American Greetings had agreed and in fact did provide MoonScoop with defense and indemnity on these Cookie Jar claims. In this regard, the MoonScoop Term Sheet expressly contemplated that Cookie Jar could bring an action against the parties, and provided that American Greetings

7

would indemnify MoonScoop if the purchase closed and Cookie Jar (or any third party) challenged American Greetings' right to sell the Properties. (MoonScoop Term Sheet at p. 5). Indeed, MoonScoop concedes that one of the purposes of this provision was to provide for the defense of MoonScoop if Cookie Jar filed an action after the closing contesting the transaction. (Vaturi Depo. at p. 83).

MoonScoop spends a great deal of its brief arguing that American Greetings' past statements and actions somehow support MoonScoop's legally incorrect position that Cookie Jar's refusal to cooperate was somehow a "claim" on the Properties. First, all of American Greetings' statements and actions are completely consistent with American Greetings' position that it was attempting to get Cookie Jar to acknowledge it would cooperate as June 7, 2009 approached because MoonScoop was taking the position that it would not close on June 7, 2009 unless it had some assurance in advance that Cookie Jar would cooperate, and not because American Greetings legally needed Cookie Jar's further cooperation to fully deliver under the MoonScoop Term Sheet. Mr. Mandelbaum made this very clear in this deposition, and there are no record facts to even suggest otherwise. (*See* Mandelbaum Depo. at pp. 91, 93, 101, 157, excerpts attached at Dckt. No. 103-2).

Second, the language in the MoonScoop Term Sheet is unambiguous, and none of the statements or actions cited by MoonScoop can change the fact that <u>Cookie Jar had no ownership interest</u> in the Properties; or the fact that—if MoonScoop had actually paid the funds, MoonScoop had the ability to get all of both American Greetings' and Cookie Jar's interests in the Properties free of any liens, claims, or security interests. In this regard, MoonScoop's appeal to the "practical construction" doctrine is completely

8

inapposite. *Smith v. Willey Sign Co.*, 1981 U.S. App. LEXIS 16944, at *3 (6th Cir. Oct. 13, 1981) ("[o]nly when the court has determined that the contract is ambiguous is… evidence of the surrounding circumstances and the practical construction of the parties… admissible to aid in its interpretation.")  Indeed, even under the authorities cited by MoonScoop, the practical construction doctrine only applies where a contract is ambiguous (and neither party has argued the MoonScoop Term Sheet is), and where the parties have engaged in an extended period of repeated performance under the contract.  *See Lippencott v. Lippencottt*, 1993 Ohio App. LEXIS 5533, at *13 (Nov. 17, 1993) and RESTATEMENT (SECOND) OF CONTRACTS § 202(4), 203, both cited at p. 15 of MoonScoop's opposition brief).  Neither of these preconditions applies here.

Thus, as a matter of law, Cookie Jar's lawsuit and refusal to give a further consent was not a "claim" against the Properties, and did not excuse MoonScoop from paying the cash to American Greetings on June 7, 2009.  For this additional, independent reason, American Greetings, and not MoonScoop, is entitled to summary judgment on MoonScoop's Second Amended Complaint.

**IV.   MOONSCOOP HAD NOT COMPLETED ITS OBLIGATIONS UNDER THE EXPRESS CONDITIONS PRECEDENT TO OBTAIN HSR APPROVAL OR FINANCING IN COMPLIANCE WITH THE TERM SHEET, AND AMERICAN GREETINGS DID NOT WAIVE THESE CONDITIONS.**

Independent of the above arguments, summary judgment should also be entered in favor of American Greetings and against MoonScoop because, through no fault of American Greetings, MoonScoop did not complete its obligations to fulfill the express conditions precedent of HSR approval or financing by the drop dead closing date.

MoonScoop continues its misplaced argument that Cookie Jar repudiated its obligations to be dragged under the Cookie Jar Letter Agreement, and, therefore, the

9

closing of the MoonScoop Term Sheet did not have to occur by June 7, 2009. (MoonScoop Opp. at p. 19).[3] Tellingly, MoonScoop does not cite a single case to support its argument. This is because under clear Ohio law, even if a seller cannot ultimately deliver (and here, American Greetings could deliver, as shown above), <u>the buyer must still complete all conditions precedent in order to be ready, willing and able to close a transaction</u>. *LRL Properties v. Rodriguez*, 1992 Ohio App. LEXIS 1974 (April 15, 1992) (even where seller repudiated, plaintiff purchaser was not "ready, willing, and able to perform" because it had not completed a contractual condition precedent that was required to be performed at least ten days before closing); *Kaufman v. Byers*, 159 Ohio App. 3d 238 (2004) ("[W]hen a condition precedent exists, performance by one party at the time or within a time frame given by the contract is essential to enable him to require the counterperformance of the other party."). This law remains undisputed by MoonScoop and is fatal to its claims.

Accordingly, because it remains undisputed that MoonScoop had <u>not</u> completed the express conditions precedent prior to June 7, 2009, MoonScoop was not "ready, willing and able" to close—regardless of whether the Properties could be fully delivered on that date. In addition, as MoonScoop concedes, it put itself in a precarious position by not fulfilling the conditions precedent because it was impossible to know what Cookie Jar would do as the June 7, 2009 deadline approached. Indeed, on June 5, 2009, to try to appease MoonScoop, American Greetings requested Cookie Jar to formally acknowledge consent to the drag along. If Cookie Jar had acceded to American

---

[3] In direct contradiction to MoonScoop's unsupported position that June 7, 2009 was "rendered irrelevant" by Cookie Jar's April 30, 2009 alleged repudiation, MoonScoop repeatedly acknowledged the importance of the June 7, 2009 date after April 30, 2009. (*See* Vaturi Depo. at pp. 68, 71-72, 145; *see also* American Greetings' Opp. Brief at pp. 3-4, Dckt. No. 103).

10

Greetings' request and then demanded the payment to Cookie Jar of 20% of the cash proceeds from MoonScoop on or before June 7, 2009, <u>MoonScoop admits it would **not** have been able to meet all of its obligations to complete the conditions precedent by June 7, 2009.</u> (Vaturi Depo. at p. 186).

Indeed, MoonScoop has admitted that if Cookie Jar had consented prior to June 7, 2009, MoonScoop would <u>not</u> be able to perform, and could then only hope that the parties would have all agreed to toll the June 7, 2009 closing date, because MoonScoop had <u>not</u> completed the conditions precedent. (Vaturi Depo. at p. 196). Thus, in failing to timely complete the conditions precedent, MoonScoop proceeded at its own risk, and could not have justifiably relied on Cookie Jar's alleged repudiation.

Although MoonScoop concedes that the HSR approval condition precedent was not completed, it weakly argues that the required filings were not its obligation. However, MoonScoop does not dispute, nor can it, that at least part of the obligation fell on its shoulders.[4] And, <u>MoonScoop admits it did not take **any** steps to fulfill this obligation</u>, even prior to the filing of Cookie Jar's lawsuit on May 6, 2009—despite the fact that MoonScoop concedes that government approval time typically takes 30 days (note that 30 days before the June 7 deadline was May 8). (Vaturi Depo. at p. 281).

With regard to the financing condition, not only was the May 28, 2009 GTCR letter obtained <u>after</u> the express date required by the MoonScoop Term Sheet, but recent discovery has shown that this GTCR financing commitment was no commitment at all, as it was wholly contingent on MoonScoop and Classic reaching a deal satisfactory to Classic and GTCR under which MoonScoop would sell almost the entire

---

[4] *See* MoonScoop Term Sheet, p. 7: "MOONSCOOP shall bear all of its own expenses, including all applicable governmental filing fees . . ." MoonScoop does not dispute that MoonScoop was required to make a filing, that MoonScoop was required to pay the filing fee, and that <u>neither</u> was done.

11

equity in the Properties to Classic immediately after the closing. (Vaturi Depo. at p. 132).

In an attempt to create an issue of fact on the financing issue, MoonScoop argues that the late delivery of the letter is that American Greetings impliedly waived its tardiness. (MoonScoop Opposition at p. 21). But, as shown in American Greetings' prior briefs and below, any potential waiver by American Greetings was contingent on payment of the required funds by MoonScoop on or before June 7, 2009. In addition, <u>MoonScoop conveniently avoids any discussion regarding the fact that this financing was wholly contingent until 11:48 p.m. on Sunday, June 7, 2009</u>.[5] It is easy to dispense with this straw man argument.

Significantly, MoonScoop is <u>not</u> arguing that there was an express waiver, but instead only claims an <u>implied</u> waiver, based on the fact that the parties were continuing to take steps to effectuate a June 7, 2009 closing, even though they both knew that the conditions precedent had not yet been completed. (*See* Vaturi Depo. at pp. 118, 129, 141). But, MoonScoop readily admits "that American Greetings told [MoonScoop] that [MoonScoop] had to be more than ready, willing and able, but [MoonScoop] had to actually close on June 7." (Vaturi Depo. at p. 76). In addition, MoonScoop admits that American Greetings <u>never</u> told MoonScoop that MoonScoop could consummate the deal if MoonScoop did not deliver the cash on June 7, 2009. (Vaturi Depo. at 123: "Q: But, again, nobody at AG ever told you that in order to make this happen you would not have to deliver the money on June 7, 2009? A: Correct"). Any alleged implied waiver of the conditions precedent based on American Greetings' continued efforts to move

---

[5] MoonScoop does not claim that it told American Greetings that it still was in fact only attempting to secure its financing up to the last minute, and American Greetings obviously could not have impliedly waived rights regarding facts to which it was not privy.

toward a June 7, 2009 closing were in the context of, and expressly contingent on, this expectation of MoonScoop actually delivering the cash on or before June 7, 2009. Mr. Vaturi's new affidavit does not raise any genuine issues in this regard.

In short, MoonScoop wants to manufacture an ambiguity, and then argue implied waiver—but all parties agree that an implied waiver requires a clear and unequivocal act directly inconsistent with a party's legal position. No such evidence exists here. Accordingly, it remains undisputed that the conditions were <u>not</u> fulfilled, and there is <u>no</u> evidence that American Greetings was willing to waive the fulfillment of the conditions precedent without an actual closing and MoonScoop's payment of cash on or before June 7, 2009. American Greetings is entitled to summary judgment for this additional and independent reason.

### V. AT BEST, MOONSCOOP'S ARGUMENTS REGARDING COOKIE JAR SHOW THAT A THIRD CONDITION PRECEDENT DID NOT OCCUR, WHICH EXCUSES AMERICAN GREETINGS' PERFORMANCE.

Finally, MoonScoop argues that, on the one hand, American Greetings was required to obtain a pre-closing consent and approval from third party Cookie Jar, but on the other hand, this third party consent somehow did not fall within the <u>express condition precedent requiring "receipt of all material necessary third party consents and approvals</u>." (MoonScoop Term Sheet at p. 2, emphasis supplied).[6] MoonScoop's argument flies in the face of the plain and unambiguous language of the MoonScoop Term Sheet. To the extent Cookie Jar's consent and approval was necessary prior to closing, American Greetings' obligations were <u>expressly</u> made conditional on receipt of

---

[6] Note that, even under MoonScoop's version of the facts, with the sole exception of a material third party consent (from Cookie Jar), American Greetings was ready, willing, and able to close on or before June 7, 2009.

13

that consent and approval on or before June 7, 2009. In short, all of the cases cited by MoonScoop for the proposition that Cookie Jar's consent and approval was an obligation and not a condition precedent is inapposite because <u>none of those cases included contract language expressly listing third party consents and approvals as a condition precedent</u>.[7]

In addition, although MoonScoop argues that American Greetings "should have done more" to obtain Cookie Jar's consent and approval prior to June 7, 2009, tellingly, MoonScoop wholly fails to explain just what it would have had American Greetings do. MoonScoop readily admits that American Greetings did <u>not</u> control the third party, Cookie Jar, whose consent MoonScoop claims was necessary. (Vaturi Depo. at p. 50). And, as shown in American Greetings' initial brief, as a matter of well established Ohio law, a seller is <u>not</u> required to take extraordinary action to obtain the consent or approval of third parties outside the control of the contracting parties, and if the consents are not obtained prior to its closing date, the seller is <u>not</u> obligated to close. (*See* American Greetings' First Brief at pp. 22-24, Dckt. No 88). Once again, this law remains undisputed and favors American Greetings.

Accordingly, for this additional and independent reason, American Greetings is entitled to summary judgment.

---

[7] Indeed, MoonScoop's argument is built on a house of cards. Unlike the cases on which MoonScoop relies, here, there was no provision stating that American Greetings was obligated to deliver Cookie Jar's consent. In stark contrast, see the unreported case on which MoonScoop relies, *Adkins v. Bratcher*, 2009-Ohio-42 (Ohio Ct. App., Jan. 2, 2009) (MoonScoop Opp. at p. 22), where there was no express condition precedent, and "the purchase agreement provides that the [sellers] 'shall convey to Buyer marketable title in fee simple by transferable and recordable general warranty deed....'" *Id.* at ¶ 34. This case also involved real property, not a license agreement, and the seller never even argued failure of conditions precedent in the trial court, did not oppose summary judgment, failed to make closing arguments, and deeded the property at issue to a third party without returning the buyer's deposit.

## CONCLUSION

For all of the foregoing reasons, in the interests of justice, and because there are no genuine issues of material fact, American Greetings Corporation and Those Characters From Cleveland, Inc. request that this Court grant American Greetings' motion for summary judgment on MoonScoop's Second Amended Complaint, and deny MoonScoop's cross motion for summary judgment.

Respectfully submitted,

*s/Damond R. Mace*
Damond R. Mace (0017102)
*dmace@ssd.com*
Steven A. Friedman (0060001)
*sfriedman@ssd.com*
Donald W. Herbe (0076500)
*dherbe@ssd.com*
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Phone:  (216) 479-8500
Fax:  (216) 479-8780

Attorneys for American Greetings Corporation
and Those Characters From Cleveland, Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that on March 8, 2010, a copy of foregoing was filed electronically. Notice of this filing is being sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                    *s/Damond R. Mace*
                                    One of the Attorneys for American Greetings Corporation and Those Characters From Cleveland, Inc.