UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                               :
MOONSCOOP SAS, *et al.*,                       :
                                               :
                    Plaintiffs,                :        Case No. 1:09-CV-1885
                                               :
vs.                                            :
                                               :
AMERICAN GREETINGS CORP., *et al.*,            :        OPINION & ORDER
                                               :        [Resolving Doc. Nos. 86, 87, 88]
                    Defendants,                :
                                               :
vs.                                            :
                                               :
COOKIE JAR ENTERTAINMENT, INC.,                :
                                               :
                    Third-Party Defendant.     :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this breach of contract case, Plaintiff MoonScoop SAS ("MoonScoop") moves for summary judgment as to its claims against Defendant American Greetings Corp. ("American Greetings") and against Third-Party Defendant Cookie Jar Entertainment, Inc. ("Cookie Jar")'s cross-claims. American Greetings separately moves for summary judgment against MoonScoop.

The parties dispute whether each satisfied contracts for the sale of American Greetings's interest in the intellectual property associated with the Strawberry Shortcake and Care Bear characters. MoonScoop says that American Greetings broke a contract requiring American Greetings to transfer rights in Strawberry Shortcake and Care Bears and ending any claim of Cookie

Case Nos. 1:09-CV-1885
Gwin, J.

Jar to the characters. American Greetings says that MoonScoop lost its right to purchase the Strawberry Shortcake and Care Bear character properties when it failed to close the transaction and pay for the properties before June 7, 2009, a closing date that American Greetings says MoonScoop knew was crucial. Finally, Cookie Jar says that MoonScoop wrongly interfered with its rights to the same properties.

For the following reasons, this Court **GRANTS** MoonScoop's Motion for Summary Judgment against Cookie Jar, [Doc. 86], **GRANTS IN PART** and **DENIES IN PART** MoonScoop's Motion for Partial Summary Judgment against American Greetings, [Doc. 87], and **GRANTS** American Greetings's Motion for Summary Judgment against MoonScoop. [Doc. 88.]

## I. Background

Since American Greetings designed the character Strawberry Shortcake in the late 1970s, she has generated "billions of dollars in revenues" for the company and its subsidiary Those Characters from Cleveland, Inc. In 2001, American Greetings entered into a long-term contract with DIC Entertainment Corporation ("DIC"), a television production and licensing company. Under its contract with American Greetings, DIC served as licensing agent for Strawberry Shortcake, marketing and distributing certain television, video, merchandising, and other products involving the character. [Doc. 89-2.]

The American Greeting - DIC agreement gave DIC favorable commission rights, arguably because DIC principles brought special talents to marketing Strawberry Shortcake. Reflecting this, the 2001 Licensing Agreement contained a "key-man" provision that permitted American Greetings to terminate the agreement if two DIC principals—CEO Andy Heyward and president Brad Brooks—left the company or if DIC was sold to an American Greetings competitor. [Doc. 89-2 at

Case Nos. 1:09-CV-1885
Gwin, J.

29.]

In early 2008, Cookie Jar, a Canada-based entertainment production and licensing company, entered into negotiations to acquire DIC. [Doc. 89-3.]  Ultimately, a Cookie Jar subsidiary entered into a merger agreement with DIC's parent company, DIC Entertainment Holdings, Inc. ("Holdings").  Believing this merger violated the 2001 Licensing Agreement, American Greetings immediately terminated the agreement and filed suit against DIC, Holdings, and Cookie Jar. [N.D. Ohio Case No. 1:08-CV-1533].  In July 2008, soon before a scheduled preliminary injunction hearing, the parties reached a settlement.  The July 2008 settlement largely underlies instant dispute.

As part of the settlement, American Greetings and Cookie Jar entered into several contracts. In addition to a Settlement Agreement and Release, in which American Greetings consented to the DIC-Cookie Jar merger, the parties executed a Binding Letter Agreement  ("2008 Letter Agreement") and an Amendment to the 2001 Licensing Agreement.   Under this 2008 Letter Agreement, Cookie Jar agreed to purchase the Strawberry Shortcake and Care Bears intellectual properties from American Greetings for $195 million. [Doc. 89-5.]

Under the 2008 Letter Agreement, Cookie Jar needed to close its purchase of Strawberry Shortcake and Care Bears no later than September 30, 2008. [Doc. 89-5 at 2.]  Cookie Jar defaulted on this obligation.  After Cookie Jar's default and consistent with the 2008 Letter Agreement, American Greetings began soliciting bids for the properties from other interested buyers.  . [Doc. 89-5 at 6.]

On March 24, 2009, American Greetings agreed to sell the properties to MoonScoop, a French entertainment production and brand management company.   American Greetings and MoonScoop reflected their sales contract in a Binding Term Sheet ("MoonScoop Term Sheet").

Case Nos. 1:09-CV-1885
Gwin, J.

[Doc. 89-6.] Under this term sheet, MoonScoop agreed to purchase the properties, including Cookie Jar's licensing rights, for $95 million. [*Id.*] The parties set the closing date for the sale at the earlier of thirty days from its signing (unless the parties agreed to an extension) or one business day following the satisfaction or waiver of the term sheet's "Conditions." [*Id.* at 2.] Important to the issues involved with the summary judgment motions, the term sheet also provided that "in no event" could the transaction close later than seventy-five days from its date. [*Id.*]

As required under a "Matching Right" provision, in its 2008 Letter Agreement with Cookie Jar, American Greetings also notified Cookie Jar of the MoonScoop offer.  On March 30, 2009, Cookie Jar said that it would match MoonScoop's $95 million offer. [Doc. 89-7.]  American Greetings responded the same day, confirming that Cookie Jar would have the right to match the terms of the MoonScoop Term Sheet and informing Cookie Jar it had until April 30, 2009, to close the transaction. [Doc. 89-8.]

Although American Greetings and Cookie Jar discussed extending this deadline, the parties could not agree on an extension. [Doc. 89-9, 110-2.]  On the April 30 closing date, Cookie Jar informed American Greetings that it was "still in the process of seeking financing." Cookie Jar also complained that American Greetings had failed to offer Cookie Jar the same amount of time given MoonScoop to close the deal and complained that American Greetings had given MoonScoop a $22.5 million production/work-for-hire agreement that American Greetings had not offered Cookie Jar. [Doc. 89-10.]

On May 1, 2009, American Greetings informed MoonScoop that Cookie Jar had not completed its match. [Doc. 87-2 at 4.]  Although the parties dispute the date's significance, they agree that June 7, 2009, became the new date for the American Greetings-MoonScoop closing,

Case Nos. 1:09-CV-1885
Gwin, J.

seventy-five days after the March 24, 2009 term sheet. [Doc. 88-1 at 12, 87-1 at 11.]

After Cookie Jar's alleged failure to match the MoonScoop offer, American Greetings and MoonScoop resumed communications. With their discussions, American Greetings and MoonScoop focused much attention to a "Drag Along" provision of the 2008 Letter Agreement and American Greetings's obligation and ability to deliver Cookie Jar's current licensing rights to MoonScoop as part of the deal.

Under the "Drag Along" provision, if American Greetings closed on the MoonScoop Term Sheet by June 7, 2009, American Greetings could end Cookie Jar's agency rights in the properties by paying Cookie Jar twenty percent of the proceeds. [Doc. 89-5 at 7.] In its April 30, 2009, letter, however, Cookie Jar disputed American Greetings's right to end its right to act as agent for Strawberry Shortcake. [Doc. 89-10.]

On May 6, 2009, American Greetings filed suit against Cookie Jar in Ohio, seeking to rescind the 2008 Letter Agreement, terminate the 2001 License Agreement, or enforce the drag along. Cookie Jar removed the case to this Court (Case No. 09-1056). In response, Cookie Jar filed suit in New York against American Greetings and MoonScoop, alleging breach of contract, tortious interference with business relations, fraud, and civil conspiracy.[1] [Doc. 13-10.]

In the meantime, American Greetings and MoonScoop continued to work toward closing the term sheet transaction. To finance its purchase from American Greetings, MoonScoop partnered with Classic Media ("Classic"), another media and brand management company, and one of Classic's primary equity holders GTCR Golder Rauner, LLC. Internally, MoonScoop and its partners manifested doubt whether it could close the purchase within the short time frame as well

---

[1] The New York action is currently stayed.

-5-

Case Nos. 1:09-CV-1885
Gwin, J.

as the effect of the newly-filed lawsuits on the closing date. [Doc. 88-9, 88-5 at 56.]  On May 27, 2009, representatives from MoonScoop and its partners met with representatives from American Greetings. [Doc. 87-2 at 4-5.]  According to MoonScoop, it sought the meeting to ensure that American Greetings would deliver Cookie Jar's rights and resolve any outstanding claims. [*Id.*]

On May 28, 2009, GTCR and Classic agreed to finance MoonScoop's purchase of the properties, and MoonScoop forwarded this commitment to American Greetings on May 29, 2009. [Doc. 88-10.] However, GTCR conditioned its financing upon American Greetings and MoonScoop executing a separate asset purchase agreement on terms satisfactory to GTCR. [*Id.*]  In other words, GTCR did not commit to fund MoonScoop's purchase from American Greetings until negotiations succeeded on additional terms.  Accordingly, on June 1, 2009, GTCR's counsel sent American Greetings a memorandum proposing various terms for that agreement, including a term delaying closing until after American Greetings resolved Cookie Jar's outstanding rights and claims. [Doc. 87-10.]  Over the next week, American Greetings and GTCR exchanged proposed purchase agreements but did not reach agreement on a compromise. [Doc. 88-5 at 75, 77, 87-13.]

Finally, on June 7, 2009, American Greetings, MoonScoop, and GTCR held a conference call.  At that morning call, MoonScoop said its financing was still conditioned on its entering a long form agreement with American Greetings. [Doc. 88-5 at 83.]  At 11:48 p.m., however, MoonScoop faxed and emailed a letter to American Greetings stating that MoonScoop and its financial backers were willing to close the deal solely on the terms of the MoonScoop Term Sheet. [Doc. 88-5 at 87, 87-5.]  American Greetings did not respond.

On August 11, 2009, MoonScoop sued American Greetings, claiming American Greetings broke a contract set out in the MoonScoop Term Sheet and seeking specific performance.  [Doc. 1.]

-6-

Case Nos. 1:09-CV-1885
Gwin, J.

American Greetings responded and filed a Third-Party Complaint against Cookie Jar, generally alleging the same claims as in Case No. 09-1056. [Doc. 5.]  In response, Cookie Jar filed counterclaims against American Greetings and cross-claims against MoonScoop, claiming American Greetings and MoonScoop conspired to deprive Cookie Jar of its licensing rights and its option to buy the properties. [Doc. 30.]

MoonScoop moved to consolidate this case with Case No. 09-1056. [Doc. 23.]  In response to MoonScoop's motion to consolidate, the Court reserved judgment on full consolidation but ordered the cases to proceed on parallel discovery and motion schedules.  Accordingly, on February 15, 2010, the parties filed multiple motions for summary judgment addressing nearly all of the claims in both cases.  Those motions have been fully briefed and are now ripe for ruling.

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

-7-

Case Nos. 1:09-CV-1885
Gwin, J.

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings. FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

In this opinion and order, the Court addresses all claims by and against MoonScoop. Regarding American Greetings, both parties move for summary judgment. MoonScoop also moves

-8-

Case Nos. 1:09-CV-1885
Gwin, J.

for summary judgment on Cookie Jar's cross claims against it.

### A. MoonScoop's and American Greetings's Cross-Motions for Summary Judgment

The dispute between American Greetings and MoonScoop centers on the MoonScoop Term Sheet. With their motions for summary judgment, American Greetings and MoonScoop each generally contends that the other failed to live up to its promises to buy or sell the properties. As a result, American Greetings seeks to declare the deal dead while MoonScoop seeks specific performance or damages.

Turning first to the promises exchanged in the contract, the MoonScoop Term Sheet provides that MoonScoop would purchase for $95 million:

> the Strawberry Shortcake ("SSC") and Care Bears ("CB") properties owned by [American Greetings] and its affiliates . . ., as well as all rights in those properties held by Cookie Jar Entertainment, Inc. and all of its affiliates ("COOKIE JAR") (collectively, the "Properties").

[Doc. 87-3 at 2.]

The MoonScoop Term Sheet also contained several express conditions:

> The obligations of MoonScoop and AG under this Binding Term Sheet are conditioned solely upon satisfaction or waiver of the following conditions ("Conditions to Closing"): (i) regulatory approval relating to all applicable competition filings and expiration or early termination of any applicable waiting periods, (ii) receipt of all material necessary third party consents and approvals and (iii) within 30 days of the date of this Binding Term Sheet, receipt of financing . . . on terms and conditions that are commercially reasonable in the circumstances and reasonably acceptable to MoonScoop.

[Doc. 87-3 at 3.] The parties agree that this first condition at least partially concerned the approvals required under the Hart-Scott Rodino Antitrust Improvements Act ("HSR" Act), 15 U.S.C. §18a. The HSR Act generally requires parties to make pre-transaction filings with the federal government and wait through a thirty day review period before closing. The parties dispute the meaning or

-9-

Case Nos. 1:09-CV-1885
Gwin, J.

significance of the other conditions.

> As to the transaction's deadline, the parties agreed:
>
> The closing date . . . for the transactions contemplated hereby shall occur on the earlier of (i) thirty (30) days (or such later date that is mutually agreed by the parties, but in no event later than seventy-five (75) days . . . following the date of this Binding Term Sheet) and (ii) one business day following the satisfaction or waiver of the conditions set forth below under "Conditions."

[Doc. 87-3 at 3.]  The parties dispute whether this provision and others, as well as the surrounding circumstances, made time "of the essence" in closing the MoonScoop Term Sheet.

Against this framework, MoonScoop argues that although it stood "ready, willing, and able" to close, American Greetings breached the contract by failing to deliver all of Cookie Jar's rights in the properties.  In contrast, American Greetings argues that it stood "ready willing, and able" to close, and that MoonScoop failed to satisfy the contract's conditions precedent and failed to tender the purchasing funds.

As the Court explains below, MoonScoop's failure to tender its performance under the contract and to satisfy the closing conditions by June 7, 2009, excuses American Greetings's performance as a matter of law.

*1. Time as of the Essence*

As a general rule: "[T]he time of performance is not of the essence." *Brown v. Brown*, 630 N.E.2d 763, 765 (Ohio 1993).  Nevertheless, "[T]he parties can alter this basic rule by including an express stipulation on the matter." *Id.*  In addition, "[S]uch a requirement can be implied from the nature of the contract itself, or from the circumstances under which it was negotiated." *Id.*

Although a close issue, American Greetings shows that the circumstances and the language of the MoonScoop Term Sheet made time "of the essence."  Necessarily, MoonScoop entered into

-10-

Case Nos. 1:09-CV-1885
Gwin, J.

the purchase agreement against the backdrop of American Greetings's 2001 Licence Agreement with DIC and American Greetings's 2008 Letter Agreement with Cookie Jar and the problems those agreements had caused American Greetings. In fact, some evidence suggests that MoonScoop strategized with American Greetings on how to structure a transaction that would more effectively end Cookie Jar's licensing rights. [Doc. 102-5 at 8, 9.] The long-term 2001 License Agreement required American Greetings to pay DIC nearly double typical agency commissions. American Greetings arguably agreed to these high commissions in consideration for special abilities provided by DIC executives Andy Heyward and Brad Brooks.

When Cookie Jar attempted to purchase DIC through a merger, American Greetings sued to end the 2001 License Agreement. In settling the 2008 case and agreeing to sell the properties, American Greetings believed it was ridding itself of what it believed were exorbitant agency fees. But as described, Cookie Jar defaulted on the purchase, a default that left American Greetings with no sale and with the continued requirement to pay Cookie Jar exceedingly high agency fees.

MoonScoop came into this picture during the limited time period that American Greetings could shop the properties to third parties. After Cookie Jar's default on closing its purchase, the 2008 Letter Agreement gave American Greetings only till March 31, 2009, to obtain a purchase offer. If it failed to get a third-party offer by March 31, 2009, American Greetings became stuck with Cookie Jar's outsized and extremely long-term agency commission.

But more important, American Greetings's 2008 Letter Agreement with Cookie Jar gave American Greetings only limited ability to drag along Cookie Jar's agency rights. That Letter Agreement only required Cookie Jar to give up its lucrative agency contract if American Greetings closed the transaction with MoonScoop within seventy-five days of the March 24, 2009, MoonScoop

-11-

Case Nos. 1:09-CV-1885
Gwin, J.

Term Sheet agreement.  That 2008 Letter Agreement also required that Cookie Jar be paid twenty

percent of the MoonScoop sales price and required that Cookie Jar be paid in cash and paid in full.

[Doc. 88-3 at 7.]  Against this background American Greetings and MoonScoop knew that time was

of the essence in closing the contract.

Beyond this background, the MoonScoop Term Sheet itself twice states that the closing date

"in no event" could be later than seventy-days from its signing.  In addition, MoonScoop's Joel

Vaturi testified that representatives from American Greetings explained to him the seventy-five day

limit existed because "that was the window of opportunity that American Greetings had to force

Cookie Jar to be dragged along." [Doc. 88-5 at 30.]

MoonScoop knew that American Greetings could only drag along Cookie Jar's interest if the

sale closed within seventy-five days.  MoonScoop knew that American Greetings could only rid

itself of Cookie Jar's agency contract by closing within seventy-five days.  Therefore, the Court finds

that time was of the essence.

Moreover, American Greetings did not waive this condition.  "A time is of the essence clause

may be waived when the party to be benefitted does any act inconsistent with the supposition that

he continues to hold the other party to his part of the agreement." *Sandler v. AII Acquisition Corp.,*

*Inc.*, 954 F.2d 382, 385 (6th Cir. 1992).  To constitute an implicit waiver, however, the party's

actions must "evince in some unequivocal manner an intent to waive, and must be inconsistent with

any other intent." *Id.*

MoonScoop admits that at no point during the closing period did American Greetings

expressly waive MoonScoop's obligations to obtain financing and tender payment by June 7, 2009.

Moreover, the record does not permit the inference that American Greetings unequivocally intended

Case Nos. 1:09-CV-1885
Gwin, J.

to waive that requirement by its conduct.

As American Greetings's Josef Mandelbaum testified, American Greetings told MoonScoop that it would only waive some of the contract's *other* conditions if MoonScoop actually paid cash to American Greetings *on June 7, 2009.* [Doc. 88-6 at 28-29.] Moreover, although MoonScoop argues that Cookie Jar's repudiation of the drag along rights rendered the closing date "irrelevant," this argument misunderstands the nature of the drag along.

The 2008 Letter Agreement provided both the drag along right and a "Tag Along" right, permitting Cookie Jar to willingly participate in the third-party transaction in return for twenty percent of the proceeds. [Doc. 88-3 at 7.] Thus, contrary to MoonScoop's argument, the 2008 Letter Agreement's drag along provision both contemplated and gave authority for American Greetings to bring an unwilling Cookie Jar into the transaction, as long as the transaction closed by June 7, 2009. Moreover, on May 23, 2009, long after Cookie Jar's repudiation, MoonScoop discussed posting a bond by the June 7, 2009, closing date as a way to "place AG in a hot spot." [Doc. 88-5 at 54.]

In summary, MoonScoop's evidence of waiver simply does not show an unequivocal intent to waive the timing provision. Accordingly, time was of the essence in the American Greetings-MoonScoop transaction.

*2. Breach of the MoonScoop Term Sheet*

Because time was of the essence, MoonScoop may only maintain its suit against American Greetings if MoonScoop tendered its performance on June 7, 2009. *See Lake Ridge Acad. v. Carney,* 613 N.E.2d 183, 186 (Ohio 1993) ("When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract *is essential in order to enable him to require performance from the*

Case Nos. 1:09-CV-1885
Gwin, J.

*other party*.") (emphasis added); *see also Fortune v. Fortune*, No. 90CA96, 1991 WL 70721, at *4 (Ohio Ct. App. May 3, 1991) (finding that where time was of the essence, party did not breach contract by rescinding it upon other party's failure to tender purchase price on closing date); *Jones v. Koehn*, No. 451, 1982 WL 6199, at *2 (Ohio Ct. App. Oct. 15, 1982) (holding that where time was of the essence and buyers did not have available financing by closing date, "The expiration of the time period voided the contract.").

In this case, MoonScoop does not dispute that it did not actually tender the $95 million purchase price to American Greetings. Instead, at 11:48pm on June 7, 2009, MoonScoop merely gave American Greetings "notice" that it was finally willing and ready to close. [Doc. 87-5.] Despite the fact that this notice came with only twelve minutes remaining on American Greetings's ability to drag along Cookie Jar, MoonScoop now circularly argues that it should have been excused from actually tendering payment because Cookie Jar had already refused the drag along.

As discuss above, however, this argument misunderstands the drag along rights. The only condition placed on the drag along right was not Cookie Jar's willingness to accede to the drag (this would have been the "tag along" provision), but rather the closing of the MoonScoop transaction and payment to Cookie Jar of twenty percent of the proceeds. Thus, American Greetings's failing to drag along Cookie Jar mostly results from MoonScoop's failure to pay and to close its purchase by June 7, 2009, within seventy-five days of the MoonScoop Term Sheet agreement.

Although coming somewhat later, MoonScoop also provided Cookie Jar with some additional argument to defeat American Greetings's drag along rights. As described above, the 2008 Letter Agreement gave Cookie Jar a "right to match [] any third party offer for the Properties." In telling Cookie Jar what offer it would be required to match, American Greetings and MoonScoop

-14-

Case Nos. 1:09-CV-1885
Gwin, J.

said the match included a requirement that "[Cookie Jar] shall not, directly or indirectly, shop, market, solicit, pursue or deal with any third party with respect to by any transaction involving a transfer, sale, partnership, hypothecation, merger, or other transaction involving the ownership or control of the Properties or any entity that owns or controls the Properties." [Doc. 88-4 at 3.] Despite this, MoonScoop entered into an agreement to transfer rights to the Properties to Classic Media.  If American Greetings allowed such a change of the MoonScoop Term Sheet, it would arguably defeat Cookie Jar's right to match the same deal given MoonScoop and provided Cookie Jar with another argument why it was not required to allow its interest in the Properties to be dragged along.

At best, neither American Greetings nor MoonScoop fully lived up to its obligations under the MoonScoop Term Sheet.  In such a case, where time is of the essence and the parties' failure to complete the transaction largely defeats the contract's central purpose, neither party may sue to enforce the other's obligations.  MoonScoop chose not to tender payment and otherwise close the deal and did so at its own risk.

Because MoonScoop failed to tender performance, defeating American Greetings's ability to drag Cookie Jar into the transaction, MoonScoop cannot sustain a claim for breach of contract against American Greetings.  Accordingly, the Court **GRANTS** American Greetings's motion for summary judgment on MoonSoop's contract claims and **DENIES** MoonScoop's motion for summary judgment.

*3. Promissory Estoppel*

American Greetings further moves for summary judgment on MoonScoop's promissory estoppel claim.  MoonScoop does not challenge American Greetings's motion for judgment on the

-15-

Case Nos. 1:09-CV-1885
Gwin, J.

promissory estoppel claim.

In Ohio, "The doctrine of promissory estoppel comes into play where the requisites of a contract are not met, yet the promise should be enforced to avoid injustice." *Olympic Holding Co., LLC v. ACE Ltd*, 909 N.E.2d 93, 100 (Ohio 2009); *see also Warren v. Trotwood-Madison City Sch. Dist. Bd. of Educ.*, No. 17457, 1999 WL 148233, at *8 (Ohio Ct. App. Mar. 19, 1999) ("Likewise, promissory estoppel is inconsistent with the existence of an express written contract.").  Here, the parties agree and the evidence indicates that American Greetings and MoonScoop entered into a binding contract.  Neither party in this case disputes the validity or enforceability of that contract, only whether a recoverable breach has occurred.

Accordingly, the Court **GRANTS** American Greetings's motion for summary judgment on MoonScoop's promissory estoppel claim.

### B. MoonScoop's Motion for Summary Judgment Against Cookie Jar

After American Greetings brought Cookie Jar into the instant action via a third-party complaint, Cookie Jar asserted cross-claims against MoonScoop for tortious interference with business relations, civil conspiracy, and aiding and abetting fraud. [Doc. 67 at 44-46.]  MoonScoop moves for summary judgment on each claim and the Court addresses each in turn.

*1. Tortious Interference*

Cookie Jar claims that MoonScoop tortiously interfered with two contracts between American Greetings and Cookie Jar: the 2008 Letter Agreement and 2001 License Agreement.

To establish a claim for tortious interference in Ohio, Cookie Jar must show that: (1) a contract existed between Cookie Jar and American Greetings; (2) MoonScoop knew of that contract; (3) MoonScoop intentionally procured that contract's breach; (4) MoonScoop lacked justification

Case Nos. 1:09-CV-1885
Gwin, J.

for doing so; and (5) damages to Cookie Jar. *See Fred Siegel Co., LPA v. Arter & Hadden*, 707
N.E.2d 853, 858 (Ohio 1999).[2/]

As to interference with the 2008 Letter Agreement, Cookie Jar's claim fails as a matter of
law. In support of this claim, Cookie Jar argues that a production agreement between MoonScoop
and American Greetings "subverted" its matching right. Cookie Jar fails to offer evidence, however,
that MoonScoop intentionally procured this alleged interference. Although Josef Mandelbaum of
American Greetings testified that during shop period negotiations, American Greetings discussed
with potential purchasers how to make it more difficult for Cookie Jar to match any deal, [Doc. 102-
1at 35-36], Cookie Jar does not provide sufficient evidence showing that the Production Agreement
was such a mechanism.

The question is closer as to the 2001 License Agreement. Cookie Jar argues that MoonScoop
interfered with the 2001 License Agreement by causing its subsidiary Mike Young Productions, LLC
("MYP"), an animation studio, to enter into a $22.5 million production agreement with American
Greetings.[3/]  American Greetings and MYP entered into the original Work-Made-For-Hire
Production Agreement ("WMH Production Agreement") in May 2008. [Doc. 87-17.] This
agreement called for MYP to "provide certain pre-production services in connection with AG's
production of animated, high-definition, CGI audiovisual programs based on the Strawberry
Shortcake property . . . ." [Doc. 87-17 at 2.]

---

[2/]Applying Ohio law, the Sixth Circuit has held: "Proof of a breach of contract is not an essential element of
a claim for tortious interference with a contract." *Am. Mar. Officers v. Marine Eng'rs Beneficial Ass'n*, 503 F.3d 532,
536 (6th Cir. 2007).

[3/]Although in its cross-claim, Cookie Jar partially based its tortious interference claim on MoonScoop's refusal
to consent to American Greetings giving Cookie Jar an extension of time to match the MoonScoop Term Sheet, Cookie
Jar does not pursue that basis on summary judgment.

Case Nos. 1:09-CV-1885
Gwin, J.

As a prerequisite to MoonScoop's entering the MoonScoop Term Sheet, American Greetings and MoonScoop executed an amendment to the WMH Production Agreement on March 20, 2009. [Doc. 60-14.]  The amendment added the Care Bears properties to the agreement and stated: "For the avoidance of doubt, AG is the producer of any audiovisual programs referenced in this Amendment and/or the Agreement.  Accordingly, AG shall provide all of [sic] customary and usual producing services . . . ." [Doc. 60-14 at 1.]

The nature of the WMH Production Agreement matters because the 2001 License Agreement provides that: "If [American Greetings] elects to produce with a third party or to authorize a third party to produce in any format live-action or animated sequel(s) or spin-off(s) to the Programs based on the Property . . . , [Cookie Jar] will have a right of first negotiation and last refusal to act as producer . . . ." [Doc. 88-2 at 17.]

Relevant to Cookie Jar's tortious interference claim, the parties do not dispute that a contract existed between Cookie Jar and American Greetings, that MoonScoop knew of that contract, and that Cookie Jar could show some damages from not receiving the contract.  Instead, the parties dispute whether MoonScoop intentionally procured that contract's breach and whether  MoonScoop had justification for doing so.  Although justification is a fact-specific determination based on the particular circumstances, *Bridge v. Park Nat'l Bank*, 903 N.E.2d 702, 708 (Ohio Ct. App. 2008), no genuine dispute of material fact exists that MoonScoop did not "intentionally procure" any breach of the 2001 License Agreement.

As evidence of intentional procurement, Cookie Jar says that MoonScoop insisted that American Greetings enter into the WMH Production Agreement before it would bid on the properties.  Although this is strong evidence that MoonScoop intended to enter into its agreement

-18-

Case Nos. 1:09-CV-1885
Gwin, J.

with American Greetings, it does not show that MoonScoop entered the contract to intentionally *procure a breach* of the 2001 Licensing Agreement.  In fact, the language of the WMH Production Agreement confirming American Greetings as producer and even the email from MYP president Liz Young that "the show has to be seen to be produced by AG not MYP," [Doc. 67-5 at 50], suggests that MoonScoop took steps to ensure that its agreement did *not* breach the 2001 License Agreement.

Because MoonScoop did not "intentionally procure" any breach of the 2001 License Agreement as a matter of law, the Court **GRANTS** MoonScoop's motion for summary judgment on this claim.

*2. Civil Conspiracy and Aiding & Abetting Fraud*

Cookie Jar additionally claims that MoonScoop conspired with American Greetings to deprive Cookie Jar of its matching rights and to force a drag along of its licensing rights and further claims that MoonScoop aided and abetted American Greetings's fraud.

To prove a civil conspiracy, Cookie Jar must show: "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *Pappas v. Ippolito*, 895 N.E.2d 610, 623 (Ohio Ct. App. 2008).  Assuming that Ohio recognizes a claim for aiding and abetting fraud, *see Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006) ("It is unclear whether Ohio recognizes a common law action for aiding and abetting tortious conduct."), this claim also requires proof of an underlying fraud.  Accordingly, both Cookie Jar's civil conspiracy and aiding and abetting fraud claims fail as a matter of law if Cookie Jar cannot prove that American Greetings engaged in fraud.

To establish a claim for fraud under Ohio law, Cookie Jar must show: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction

Case Nos. 1:09-CV-1885
Gwin, J.

at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Casey v. Reidy*, 906 N.E.2d 1139, 1143 (Ohio Ct. App. 2009).

In support of its fraud claim, Cookie Jar argues that American Greetings fraudulently represented that American Greetings would give Cookie Jar an opportunity to exercise its matching right under the 2008 Letter Agreement. [Doc. 67 at 32.] Although Cookie Jar claims this representation was material and that it relied on the representation, Cookie Jar provides insufficient evidence to show that this statement was false or that American Greetings knew of its falsity.

In fact, the evidence shows that American Greetings promptly informed Cookie Jar of the MoonScoop Term Sheet, that Cookie Jar "exercised" its match right, and that Cookie Jar did not obtain adequate financing by the thirty-day term sheet deadline. Although Cookie Jar points to evidence that American Greetings hoped to make it difficult for Cookie Jar to match and wanted to end the licensing agreement, this evidence does not permit the inference that American Greetings accordingly defrauded Cookie Jar. By essentially arguing that anything short of a completed match transaction would amount to fraud, Cookie Jar's simply asks too much.

Because Cookie Jar fails to identify a false statement made with knowledge of its falsity, it cannot prove fraud under Ohio law. Accordingly, the Court **GRANTS** MoonScoop's motion for summary judgment on Cookie Jar's civil conspiracy and aiding and abetting fraud claims.

### C. Indemnification & Defense

Finally, MoonScoop moves the Court to declare that the MoonScoop Term Sheet and WMH

Case Nos. 1:09-CV-1885
Gwin, J.

Production Agreement require American Greetings to indemnify MoonScoop against Cookie Jar's

cross-claims in this case. American Greetings briefly responds that it has fully satisfied its indemnity

obligations and that any indemnity issues are moot.

> As to defense and indemnification, the MoonScoop Term Sheet provides:
>
> If any of MoonScoop, its subsidiaries and/or its affiliates, . . . is named as a party in any claim or legal action arising from the purchase of the Properties and the claimant or claimants in such action assert that AG did not have the legal right to sell and transfer the Properties to MoonScoop, as provided herein *or such third party claims or actions otherwise arise as a result of the submission or execution of this Binding Term Sheet, then AG shall indemnify and defend the MoonScoop parties against any costs, expenses and liabilities resulting from such claim or action*; <u>provided,</u> that AG shall be entitled to prosecute such defense and assume control of all settlement negotiations; . . . MoonScoop shall be permitted to participate in the defense with its own counsel at its own cost. If, in MoonScoop's reasonable, good faith belief, AG fails to provide an adequate defense to any claim or action, MoonScoop may take any actions necessary to adequately defend itself at AG's expense. The indemnification provisions set forth herein shall survive indefinitely.

[Doc. 87-3 at 6-7] (emphasis added).

> Further, the parties' WMH Production Agreement states:
>
> AG represents and warrants: (i) . . . that it has the full right, power and authority to enter into this Agreement, to perform fully the terms and conditions of this Agreement and to engage MYP to perform the services to be performed by MYP hereunder, and the permission of no other party is required in connection therewith; . . .
> (iv) *Indemnification*. AG shall indemnify, defend, save and hold MYP and any of its parents, subsidiaries or affiliates . . . harmless from any and all actions, claims, losses, liabilities, damages and other costs and expenses (including, without limitations, reasonable attorneys' fees and costs) arising out of or relating to any breach by AG of any of its representations, warranties, agreements, obligations or agreements under this Agreement . . . .

[Doc. 87-17 at 7.]

> Together, these provisions require American Greetings to defend and indemnify MoonScoop

against Cookie Jar's cross-claims in this case. As discuss above, all three cross-claims "arise as a

Case Nos. 1:09-CV-1885
Gwin, J.

result of the submission or execution of the Binding Term Sheet" (civil conspiracy, aiding and abetting fraud) or as a challenge to American Greetings's authority "to enter into [the WMH Agreement]," and, "to engage MYP to perform the services to be performed by MYP" (tortious interference).

American Greetings says that it has discharged its indemnification duties under the MoonScoop Term Sheet as of February 18, 2010, and implicitly argues that it did not do so before because MoonScoop had not offered to let American Greetings retain counsel of its choice. [Doc. 103-3.] In two prior letters to MoonScoop, however, American Greetings unequivocally stated: "substantively and procedurally no such indemnity obligation exists." [Doc. 87-21.] Thus, American Greetings' "counsel of choice" argument does not find support in the record.

American Greetings also contends that the 2009 amendment to the WMH Production Agreement excludes Cookie Jar's cross-claims. This limited amendment, however, concerns American Greetings's exclusive obligation to give MoonScoop the right of first negotiation and last refusal for any new animation productions and carves out an exception where American Greetings may have other agreements that impact this exclusive right. [Doc. 87-17 at 14-15.] American Greetings does not provide any argument showing how this provision affects its indemnity obligations, especially where the claims involve only its ability to enter into the original agreement, as opposed to the contracts for new animation productions contemplated by the amendment.

Accordingly, the MoonScoop Term Sheet and the WMH Production Agreement require American Greetings to defend and indemnify MoonScoop against Cookie Jar's cross-claims.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS** MoonScoop's Motion for Summary

Case Nos. 1:09-CV-1885
Gwin, J.

Judgment against Cookie Jar, [Doc. 86], **GRANTS IN PART** and **DENIES IN PART**

MoonScoop's Motion for Partial Summary Judgment against American Greetings, [Doc. 87], and

**GRANTS** American Greetings's Motion for Summary Judgment against MoonScoop. [Doc. 88.]

      IT IS SO ORDERED.


Dated: April 27, 2010            s/        *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE