IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MOONSCOOP SAS, | CASE 1:09-CV-01885-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| v. | |
| AMERICAN GREETINGS CORPORATION, | MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE REGARDING DAMAGES |
| Defendant. | |

As shown below, the only remedy available to MoonScoop is money damages, not specific performance. Further, on the facts present here, the amount of damages (even if MoonScoop were able to establish liability) is severely limited.

First, MoonScoop readily has acknowledged that if it succeeds in its breach of contract action here, it has an adequate remedy at law for monetary damages. In fact, MoonScoop has served an expert report detailing its alleged monetary damages from American Greetings' purported breach of the March 24, 2009 binding term sheet (attached as Exhibit A). Moreover, on June 7, 2009, the day by which the binding term sheet was to close, MoonScoop warned American Greetings that it was "able to demonstrate with a great deal of precision what MoonScoop was making out of this deal and lost due to your failing to perform under our binding agreement." (See June 7, 2009, 7:23 am e-mail from Joel Vaturi to Josef Mandelbaum and Zev Weiss (Vaturi Deposition Exhibit 30) (attached

as Exhibit B.))

Under established Ohio law, the normal remedy for breach of contract is an award of damages. Only under exceptional circumstances, where monetary damages are not quantifiable, is the remedy of specific performance available. Such exceptional circumstances obviously do not exist here, where MoonScoop admits that its purported damages are readily quantifiable. Accordingly, any request by MoonScoop for specific performance should be stricken, and MoonScoop should only be allowed to present evidence at trial relating to the monetary damages that it claims it would have obtained if American Greetings did not breach the agreement.

Second, any potential damages are limited. The basic facts are not in dispute regarding "what MoonScoop was making out of this deal." MoonScoop's ability to perform under the March 24, 2009 binding term sheet was conditioned on its June 7, 2009 binding term sheet with Boomerang Media, Inc. ("Classic") (the "MoonScoop/Classic Agreement") (attached as Exhibit C). Under the MoonScoop/Classic Agreement, upon the closing of the American Greetings/MoonScoop March 24, 2009 binding term sheet, MoonScoop agreed to immediately transfer any rights it acquired in the Properties to Classic. MoonScoop's consideration in the MoonScoop/Classic Agreement was to be appointed as an agent for licensing the Properties in France and Benelux at a set commission rate for a minimum of five years. This is "what MoonScoop was making out of the deal" and, as detailed in both parties' expert reports, MoonScoop's damages from this lost opportunity are readily ascertainable.

Accordingly, even if MoonScoop were able to prevail on its claim that American Greetings breached the parties' March 24, 2009 binding term sheet (which American

Greetings vigorously disputes), MoonScoop should be limited to presenting evidence of its monetary damages arising from its alleged loss of consideration under the MoonScoop/Classic Agreement.

## Summary Background Facts

This action involves American Greetings' alleged breach of a March 24, 2009 binding term sheet with MoonScoop, under which American Greetings sought to sell certain intellectual property rights, including copyrights, in Strawberry Shortcake and Care Bears (the "Properties"). Per the terms of the March 24, 2009 binding term sheet, the transaction had to close no later than June 7, 2009 for a purchase price of $95,000,000 paid in cash.

The proof at trial will be that American Greetings did not breach the March 24, 2009 binding term sheet, *inter alia*, because MoonScoop failed to deliver the proceeds to close the transaction on or before June 7, 2009 (and was not even able to do so) as required by the terms of the binding term sheet, and none of the three conditions precedent in the binding term sheet were satisfied prior to June 7, 2009. However, even if American Greetings breached the March 24, 2009 binding term sheet, MoonScoop's only legally viable remedy would be limited to the monetary damages arising from the alleged loss of the consideration MoonScoop expected to derive from the MoonScoop/Classic Agreement.

The following facts are undisputed. MoonScoop did not have $95,000,000 available to close the March 24, 2009 binding term sheet with American Greetings, and needed to obtain financing for the $95,000,000 from Classic's affiliate, GCTR Fund IX/A, L.P. As a condition of the financing, MoonScoop was required to enter into the MoonScoop/Classic

3

Agreement, under which MoonScoop agreed "that upon acquiring the Properties from AG pursuant to the [March 24, 2009] Binding Term Sheet, MoonScoop will transfer all of its right, title and interest in the Properties (or as the Buyer pursuant to any purchase agreement it may enter into with respect to the Properties) to Classic or one of Classic's affiliates."

Accordingly, it is undisputed that had the March 24, 2009 binding term sheet been consummated on June 7, 2009, all right, title and interest in the Properties would have been transferred to Classic.

In exchange for its transfer of all right, title and interest in the Properties, the MoonScoop/Classic Agreement provided for the appointment of MoonScoop as the agent for licensing the Properties in France and Benelux at a set commission rate for a minimum of five years.[1]  Accordingly, in the "but for" world, if the three conditions precedent had been met, the $95 million had been paid by MoonScoop, and American Greetings had delivered the Properties to MoonScoop on June 7, 2009, MoonScoop would <u>not</u> have owned or controlled the Properties.  Indeed, MoonScoop would not have benefited from the Properties' acquisition in any way other than the opportunity to be the licensing agent in

---

[1] In addition, as part of Classic's acquisition of the Properties, Classic would assume the separate work for hire production agreement between Mike Young LLC and American Greetings (the "Production Services Agreement") and MoonScoop and Classic agreed to attempt to renegotiate the terms of the Production Services Agreement into a co-production agreement.  However, because the American Greetings/MoonScoop March 24, 2009 binding term sheet did not close, MoonScoop's subsidiary, Mike Young LLC, maintained the Production Services Agreement, and American Greetings has already paid Mike Young LLC over $21,000,000 under the terms of the Production Services Agreement.  Accordingly, MoonScoop and its subsidiary have suffered no damage from the loss of the potential restructuring of the Production Services Agreement.  In fact, in the "but for" world, American Greetings would be entitled to a credit for the substantial amounts it has paid under the Production Services Agreement.

4

...

France and Benelux.

## Argument

**A. As a Matter of Law, MoonScoop is Not Entitled to Specific Performance Because it Has an Adequate Remedy at Law for Money Damages.**

Under Ohio law, specific performance is an extraordinary remedy available only in limited circumstances "when the promisor's failure to perform constitutes a breach of the . . . contract, and a remedy for the breach which is ordinarily available at law, such as money damages, will not afford the promisee adequate relief for a loss arising from the breach." *Four Howards, Ltd. v. J & F Wenz Rd. Inv., LLC*, 179 Ohio App. 3d 399, 412 (6th Dist. 2008).  Ohio law is clear that "[s]pecific performance is only available where there is no adequate remedy at law."  *Gleason v. Gleason*, 64 Ohio App. 3d 667, 672 (4th Dist. 1991).  A party seeking specific performance has the burden of proving that damages are an inadequate remedy; and, "in the absence of such evidence, a court must assume that a legal remedy exists and refuse to grant specific performance."  *Id.*

Here, as MoonScoop readily admits, damages from American Greetings' alleged breach of contract would be adequate to make MoonScoop whole.  MoonScoop has served a detailed expert report showing the monetary damages it claims to have lost due to the fact that the March 24, 2009 binding term sheet did not close on June 7, 2009.  Further, on the morning of June 7, 2009, MoonScoop's principal, Joel Vaturi, threatened in an e-mail to American Greetings that should MoonScoop prevail in a breach of contract action it would be "able to demonstrate with a great deal of precision what MoonScoop was making out of this deal and lost due to your failing to perform under our binding agreement."  See June 7, 2009, 7:23 am e-mail from Joel Vaturi to Josef Mandelbaum and Zev Weiss (Vaturi

Deposition Exhibit 30) (Ex. B). Accordingly, MoonScoop has admitted that it has an adequate remedy at law for damages for the alleged breach of contract.

MoonScoop may argue that the Properties are "unique" and therefore specific performance should be available. However, unlike real estate, intellectual property rights – like those at issue here – generally are *not* unique for purposes of specific performance. In addition, on these facts, MoonScoop essentially was acting as a broker, and never would have obtained any rights from the particular nature of the intellectual property itself.

First, the fact that intellectual property rights are in some way "unique" does not mean that money damages are not an adequate remedy for the breach of a sale agreement such that specific performance should be awarded. Even in cases involving intellectual property rights, a plaintiff must show that monetary relief is not an adequate remedy. *See Metromedia Broadcasting Corporation v. MGM/UA Entertainment Co., Inc.*, 611 F.Supp. 415 (C.D. Cal. 1985) (for a breach of a license agreement to broadcast *FAME* television show, court held that the extraordinary relief of specific performance was not available because monetary damages could be calculated for the loss of the use of the copyrighted property); *Goldfarb v. The Robb Report, Inc.*, 101 Ohio App. 3d 134, 146 (10th Dist. 1995) (request for specific performance denied for breach of a franchise agreement providing plaintiff-franchisee the exclusive right to operate a business under the unique trade name "The Robb Report" because plaintiff failed to present evidence that damages would be inadequate to compensate for the loss of future earnings); *see also, Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) (courts cannot assume irreparable injury due to infringement of unique copyrighted material, and plaintiff must show that monetary

damages are insufficient in order to obtain equitable relief).

In *Metromedia Broadcasting,* the court analyzed a contract regarding broadcast rights to the television show *FAME*.  611 F.Supp at 418.  The Court acknowledged that each episode of the show was copyrighted and that "FAME is (by definition) unique." *Id.* at 421.  Nonetheless, and despite plaintiff's argument that it was entitled to specific performance because "*FAME* was to be the centerpiece of its new programming image for which there is no substitute," the Court found no irreparable injury and that monetary damages were sufficient as a matter of law.  *Id.* at 426-27.

Like *FAME*, the loss of the use of the copyrighted material at issue here can be fully compensated by money damages.  Not only has MoonScoop prepared a detailed expert report regarding its monetary damages for any purported breach of March 24, 2009 binding letter agreement, but the parties have exchanged numerous pro formas and valuations of the Properties and their past and anticipated financial performance.  In short, because monetary relief for its purported loss of profits due to the alleged breach of the March 24, 2009 binding term sheet are readily ascertainable, MoonScoop is not entitled to specific performance or any equitable relief.

Furthermore, and importantly, even if a buyer of the Properties in the normal course would be entitled to the specific performance (and as shown above that is not the case), here it is undisputed that MoonScoop would *never* own the Properties.  MoonScoop was essentially acting as a broker, as it was purchasing the Properties solely for the purpose of immediately transferring all ownership to Classic.  In a case like this, where a party plans to resell an asset (even a unique asset), specific performance can never be a possible

7

remedy because the exact measure of monetary damages is readily calculable and available. *See Miller v. Lesea Broadcasting*, 87 F.3d 224 (7th Cir. 1996) (specific performance not available as a matter of law where buyer was buying a business for the purpose of reselling it); *Klein v. PepsiCo, Inc.*, 845 F.2d 76 (4th Cir. 1988) (specific performance not available for breach of a contract to sell an airplane because the buyer intended to resell the plane for a profit); *Watkins v. Paul*, 95 Idaho 499 (Idaho 1973) (even in a breach of a contract action involving the sale of real property, specific performance is not available if the buyer was purchasing the real property in order to resell it).

In *Watkins*, for example, the Court examined a contract for the sale of land. 95 Idaho 499. Although specific performance is typically available for real estate, because the plaintiff was buying the land solely to resell it, the Court denied plaintiff's request for specific performance:

> [it] cannot be seriously contended that the remedy at law via damages was not adequate, plain, speedy, and complete in this case. The evidence fails to show that the plaintiffs need the land in question for any particular, unique purpose, which is one of the main reasons for granting specific performance; on the contrary, the plaintiffs' own evidence shows that they seek to obtain the land only so that they may resell it for profit. Under these circumstances, specific performance would bring the plaintiffs no greater relief than would damages in the amount of their lost profit.

95 Idaho at 501 (internal citations omitted).

Similarly, in *Miller v. Lesea Broadcasting*, 87 F3d. 224, the district court on cross-motions for summary judgment held that the plaintiff's right of first refusal entitled him to buy a television station owned by defendant for $2.5 million. Plaintiff was the general manager of the station and his employment contract allowed him to match any offer to purchase the station. Although contracts for the sale of an entire business are sometimes

8

enforced by specific performance, Judge Posner, writing for a unanimous panel of the Seventh Circuit, rejected plaintiff's request for specific performance because the plaintiff intended to immediately sell the business after acquiring it from the defendant:

> In a case in which, although the contract is for the sale of an entire business, the buyer's negotiations to resell the property enable his loss from the breach to be exactly monetized, the case for specific performance collapses. *Watkins v. Paul, 95 Idaho 499, 511 P.2d 781, 783 (Idaho 1973)*; *Klein v. Pepsico, 845 F.2d 76, 80 (4th Cir. 1988)*; cf. *Sundstrand Corp. v. Standard Kollsman Industries, Inc., 488 F.2d 807, 815 (7th Cir. 1973)*. We know that [Plaintiff] lost $ 500,000 by being denied the purchase of the station, and there is no suggestion that [Defendant] is not good for this amount.

*Id.* at 230.

The reasoning of the Idaho Supreme Court in *Watkins* and Judge Posner in *Miller* is sound and fully applicable here.  MoonScoop does not dispute that its acquisition of the Properties under the March 24, 2009 binding term sheet was solely to immediately transfer ownership of the Properties to Classic.  Indeed, MoonScoop was required to transfer ownership of the Properties to Classic in order to try to obtain financing to consummate the March 24, 2009 binding term sheet.[2]  Also, like the cases cited above, MoonScoop's exact "benefit of the bargain" is reasonably ascertainable and consists of the consideration it would have obtained under the MoonScoop/Classic Agreement.  Under these circumstances, monetary damages can fully compensate MoonScoop, and as a matter of law it cannot obtain specific performance.

---

[2] There also is no dispute that MoonScoop did not breach its June 7, 2009 Agreement with Classic by failing to deliver the Properties, because MoonScoop's obligation to transfer the Properties was conditional, and only arose if it actually obtained the Properties.

9

**B. Because MoonScoop's Alleged Benefit of the Bargain is Limited to What it Would have Obtained Under the June 7, 2009 Agreement with Classic, its Damages Do Not Include the Difference Between the Fair Market Value of the Properties as of June 7, 2009 and $95,000,000.**

In its expert report, MoonScoop offers two damages methodologies.  The first methodology is based on the difference between the purported value of the Properties as of June 7, 2009 and $95,000,000.  The second methodology is based on the profits MoonScoop anticipated obtaining under the MoonScoop/Classic Agreement if the March 24, 2009 binding term sheet had closed on June 7, 2009.  As a matter of law, MoonScoop is only entitled to pursue its claim under the second methodology, and it should not be allowed to present evidence or argument to the jury regarding the first methodology.

"It is well established that 'the purpose of damages for breach of contract is to restore the benefit of the bargain to the plaintiff by placing plaintiff in the position he or she would have been in had defendant performed the contract." *James v. Sky Bank*, 2012 Ohio App. LEXIS 3430, \*\*11 (11th Dist. Aug. 27, 2012) (quoting *Knight v. Hughes*, 1987 Ohio App. LEXIS 8786, \*9 (10th Dist. Sep. 17, 1987)); *accord Buckley v. Ollila*, 2000 Ohio App. LEXIS 787, \*7-8 (11th Dist. Mar. 3, 2000) ("money damages awarded for breach of contract are designed to place an aggrieved party in the same position he or she would have been had the contract not been breached").  "That is, damages are to be compensatory in nature and not punitive." *Victorian Room Banquet Ctr. v. Bernard*, 2006 Ohio App. LEXIS 4881, \*\*5 (11th Dist. Sep. 22, 2006).  Accordingly, "[a] party proving breach of contract is entitled to the benefit of his bargain," but "[a] party should not be placed in a better position than if the contract had not been breached."  *Id.*

Here, as demonstrated above, the only "benefit of the bargain" that MoonScoop

would have obtained in the "but for world" (where the American Greetings/MoonScoop March 24, 2009 binding term sheet had actually closed on or before June 7, 2009) is the consideration MoonScoop would have received under the MoonScoop/Classic Agreement. MoonScoop has never disputed and cannot dispute this fact. Accordingly, these are the only damages MoonScoop would be entitled to if it succeeds in showing a breach of the contract, and MoonScoop should be limited to presenting only these damages to the jury.

## Conclusion

For all of the above reasons, American Greetings requests the Court issue an order striking MoonScoop's demand for specific performance, and limiting the evidence relating to damages from the alleged breach of the March 24, 2009 binding term sheet to the consideration that MoonScoop would have obtained under the MoonScoop/Classic Agreement.

Respectfully submitted,

s/ *Damond R. Mace*
Damond R. Mace (0017102)
*damond.mace@squiresanders.com*
Steven A. Friedman (0060001)
*steven.friedman@squiresanders.com*
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Phone:  (216) 479-8500
Fax:  (216) 479-8780

Attorneys for American Greetings Corporation