**From:** Donnini, David A.
**Sent:** Friday, January 15, 2010 12:07 PM
**To:** Leno, Edith <edith.leno@GTCR.COM>
**Subject:** FW: MoonScoop, American Greetings and Cookie Jar
**Attach:** CLE-2200956.pdf

Pls print

---

**From:** Eric Ellenbogen [mailto:ee@classicmedia.tv]
**Sent:** Friday, January 15, 2010 10:47 AM
**To:** Sondag, Eric R.; Donnini, David A.; Malkani, Zubin; Shah, Samir
**Subject:** FW: MoonScoop, American Greetings and Cookie Jar

In case you didn't receive the final "mediation statement" for next week's meeting in Cleveland, here it is. While we have no expectations for anything happening there, this statement is a good summary of our case and continues to distill our thinking about how this will be argued to the judge and ultimately a jury if it goes to trial.
e

--
**Eric Ellenbogen**
Classic Media

85 Fifth, FL6
New York, NY 10003
T  212.659.1970
F  212.659.1974



------ Forwarded Message
**From:** "Michael J. Garvin" <mjg@hahnlaw.com>
**Date:** Thu, 14 Jan 2010 20:42:30 -0500
**To:** <mkarp@ulmer.com>
**Subject:** MoonScoop, American Greetings and Cookie Jar

Marv,

I attach MoonScoop's mediation statement.

Regards,

Mike



EXHIBIT 67

Michael J. Garvin <http://www.hahnlaw.com/professionalsdetail.asp?empid=1528> Hahn Loeser & Parks LLP 200 Public Square, Suite 2800 Cleveland, OH  44114-2316 216.274.2322 (voice) 216.241.2824 (fax)  E-Mail:

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0020252

mjgarvin@hahnlaw.com Website: www.hahnlaw.com <http://www.hahnlaw.com/>

HAHN 🌐 LOESER

The information contained in this transmission may be attorney-client privileged. If you are not the intended recipient, any use, dissemination, distribution or copying of this document or its contents is strictly prohibited.

------ End of Forwarded Message

---
This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email
---

Disclosed for exclusive use in
*MoonScoop SAS v. American Greetings Corp.*,
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0020253

HAHN LOESER

Michael J. Garvin

Direct Phone: 216.274.2322
E-mail: mjgarvin@hahnlaw.com

January 14, 2010

**BY E-MAIL**

Marvin L. Karp
Ulmer & Berne LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113

Re: **MoonScoop SAS v. American Greetings Corporation
v. Cookie Jar Entertainment, Inc.
Case No. 1:09-cv-01885**

Dear Mr. Karp:

This letter sets forth MoonScoop SAS's mediation statement.

**Facts**

American Greetings and a predecessor of Cookie Jar Entertainment named DIC Entertainment were parties to a 2001 License Agreement involving an animated character developed and owned by American Greetings named Strawberry Shortcake. Under that Agreement, DIC performed certain services for American Greetings relating to Strawberry Shortcake, including acting as a Licensing Agent, a worldwide TV Distributor, and as the Producer of animated productions. When Cookie acquired DIC in early 2008, American Greetings declared the license to be terminated for breach of a provision of that License Agreement prohibiting DIC from selling its rights in that Agreement and the parties engaged in litigation. In mid-2008, the parties settled the litigation, and the settlement included an agreement (the "Letter Agreement") between American Greetings and Cookie in which Cookie was to acquire all of American Greetings' rights in Strawberry Shortcake, as well as in another set of American Greetings animated characters called the Care Bears (a property that was not within the scope of the DIC license)[1], for $195 million. It is probable that a significant driver for the settlement was that American Greetings was performing very poorly in 2008 and had significant need to raise cash.

Cookie was unable to obtain financing to complete its purchase of the Properties by the September 30, 2008 deadline set forth in the Letter Agreement, and American Greetings was then permitted by that agreement to shop the Properties to third-parties. If a third-party acquired

---

[1] In various agreements, the parties refer to Strawberry Shortcake and Care Bears collectively as "the Properties." The agreement between American Greetings and Cookie also contemplated American Greetings selling a character named "Sushi Pack." This character is not part of the subsequent agreement between American Greetings and MoonScoop that MoonScoop is seeking to enforce.

HAHN LOESER & PARKS LLP

200 Public Square Suite 2800 Cleveland, OH 44114-2316 phone 216.621.0150 fax 216.241.2824 hahnlaw.com

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017736

Mr. Marvin L Karp
January 14, 2010
Page 2

# HAHN LOESER

the properties according to certain terms contained in the Letter Agreement, Cookie would lose all of its licensing, agency and production rights in the Properties. Specifically, Cookie would be given the opportunity to "match" (a term which is undefined in the Letter Agreement) any third-party offer: if Cookie failed to do so, and if the third-party offer closed within 75 days after it was signed, then under the Letter Agreement, Cookie's rights in the Properties would be "dragged along" to the purchaser (albeit Cookie would receive 20% of the purchase price).

Cookie's acquisition of DIC was known to be a highly leveraged transaction, and DIC's interest in the American Greetings license comprised a significant portion of its value. Accordingly, Cookie's ongoing operations will be jeopardized if its interests in the Properties are "dragged along" as part of a third-party sale.

After Cookie failed to obtain financing, American Greetings shopped the Properties to many potential buyers. After steadily reducing the price during the months since the Cookie deal fell through, American Greetings ultimately set a purchase price of $95 million. On March 24, 2009, American Greetings and MoonScoop entered into a Binding Term Sheet ("BTS") for MoonScoop to purchase the Properties which set a closing date of the earlier of 30 days or a mutually agreed extension of no more than 75 days. Thereafter, American Greetings and MoonScoop mutually agreed to extend the closing of the BTS to June 7, 2009, 75 days after the BTS was signed.

There are two provisions in the BTS that MoonScoop believes are critical to its claims: First, under the BTS, American Greetings is obligated to deliver the Properties free of all third-party claims; there is no exception for American Greetings' inability to "drag along" Cookie. Second, the BTS contemplates the parties may enter into a standard long-form purchase agreement, but provides that the BTS is binding and enforceable until replaced by such an agreement.

American Greetings thereafter informed Cookie of the BTS, and Cookie notified American Greetings that it was going to exercise its "match" rights. American Greetings provided Cookie with the 30-day closing deadline as set forth in the BTS. As that deadline approached, Cookie advised American Greetings that it had been unable to obtain financing, and requested an extension of the closing deadline. Presumably because of Cookie's prior failure to obtain financing to purchase the Properties, American Greetings refused that request. In this regard, it is noteworthy to reiterate that the BTS sets a closing date of 30 days after execution, which could be extended *by mutual agreement* to no more than 75 days after execution.[2]

Meanwhile, MoonScoop commenced efforts to seek financing. MoonScoop explored financing with several sources, but ultimately partnered with Classic Media, a global media company that owns and manages one of the world's largest portfolios of animated characters. Classic is a

---

[2] Cookie has alleged that American Greetings approached MoonScoop for approval of an extension for Cookie, and MoonScoop refused. This is not true. Mr. Mandelbaum of American Greetings informed Mr. Vaturi of MoonScoop that Cookie had asked for an extension, and Mr. Vaturi responded that MoonScoop would agree provided that proper waivers were secured. Emails between Mr. Mandelbaum and Cookie establish that it was American Greetings that decided not to grant Cookie's requested extension, a fact of which Cookie is well aware.

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017737

HAHN LOESER

Mr. Marvin L Karp
January 14, 2010
Page 3

portfolio company of a major private equity firm named GTCR Golder Rauner, LLC, and thereby had the ability to obtain funding for the closing of the BTS through GTCR.

MoonScoop disclosed Classic's involvement and introduced Classic to American Greetings as its partner in the acquisition of the Properties several weeks before the contemplated closing. Classic's co-CEO's, Eric Ellenbogen and John Engelman, had many meetings, calls and e-mails with American Greetings' representatives; the parties met at both GTCR's headquarters in Chicago and American Greetings' headquarters in Cleveland shortly before the closing was supposed to take place.

As the closing date approached, it was apparent that Cookie would dispute American Greetings' right to deliver the properties free of Cookie's claims to them as American Greetings was required under the BTS. Nevertheless, American Greetings assured both MoonScoop and Classic that it would do everything in its power to close the transaction and encouraged both companies to keep working to get a deal done. To that end, for instance, in early June, employees of American Greetings, MoonScoop and Classic met in order to complete due diligence in contemplation of the closing, and the parties engaged in protracted efforts to negotiate a long-form purchase agreement and related documentation.

But things changed drastically the weekend closing was to have taken place. On Friday, June 5, 2009, both American Greetings and its counsel became unresponsive to efforts of MoonScoop, Classic and their counsel to discuss the various agreements. The parties had no communications between sundown on Friday through sundown the next day because some of the principals strictly observe the Jewish Sabbath. MoonScoop and Classic attempted to rekindle discussions of the long form purchase agreement that evening, but the only response received from American Greetings was through its CEO, Zev Weiss, who said nothing more than that he "needed flexibility." Early Sunday morning, American Greetings' counsel e-mailed a revision to the proposed long-form purchase agreement to counsel for MoonScoop and Classic. In addition to numerous other unacceptable changes, American Greetings' revision sought to remove any obligation of American Greetings to deliver the Properties free of Cookie's claims and, to the contrary, explicitly provided that the Properties would be delivered *subject to* those claims.

Disappointed by American Greetings' abrupt failure to cooperate to close the transaction, MoonScoop and Classic determined to do so based on the BTS alone, rather than a long-form agreement, as provided in the BTS. During the evening of June 7, 2009, Joel Vaturi of MoonScoop so notified American Greetings' CEO Zev Weiss by letter (copy attached as Ex. A), enclosing a letter from a GTCR fund committing to fund the transaction.[3] Neither Mr. Weiss nor any other American Greetings representative responded. Indeed, to this day, American Greetings has never stated why it was unwilling to complete the transaction, other than through informal communications claiming that American Greetings was no longer bound by the BTS

---

[3] MoonScoop and Classic did not finalize the terms of their own agreement relating to the Properties until that weekend. At that point, they agreed that upon closing of MoonScoop's purchase, it would transfer its rights in the Properties to Classic, but would retain its agency rights in them in France and the Benelux countries. Classic would also honor a highly valuable technical animation services agreement that MoonScoop's U.S. affiliate, MoonScoop LLC, had entered into with American Greetings.

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017738

because MoonScoop did not actually tender the closing funds to American Greetings by June 7, 2009 – notwithstanding that American Greetings was indisputably unable to deliver the Properties to MoonScoop free of Cookie's claims to them.

What prompted American Greetings' sudden change of heart? Our clients do not know, but suspect there are at least three reasons. First, American Greetings' financial performance and stock price have improved dramatically in 2009, lessening its needs to generate cash. Second, within two weeks after the execution of the BTS, Hasbro and Discovery Communications (owner of the Discovery Channel) announced a joint venture in which Hasbro would acquire 50% of the Discovery Kids television channel (see article attached as Ex. B), virtually guaranteeing a significant dedicated kids' channel for Strawberry Shortcake and Care Bears cartoons, a previous significant marketing and financial challenge to American Greetings. This development is particularly important because American Greetings' ownership of both Strawberry Shortcake and Care Bears in some respects is shared with Hasbro and under American Greetings' agreement with Hasbro, American Greetings is supposed to create and finance significant amounts of fresh programming. In return, Hasbro would agree to significantly reduce its participation in revenues generated by the Properties. This new broadcast venture will create a home for that programming, feeding the entire marketing chain in a very efficient manner. Under the ownership contracts on the Properties, Hasbro has major licensing rights in Strawberry Shortcake and Care Bears, and will no doubt exploit those rights in connection with the programming on the new channel, dramatically increasing their value. In other words, it is apparent that American Greetings determined that it did not want to sell assets whose value appears to have recently increased dramatically, at least not for $100 million less than it had agreed to sell them for in 2008. Third, American Greetings was obviously caught in a short seller's position not able to deliver what it sold, and was determined to find a way to extricate itself from the liability it had created.

## Legal Issues

Although there are several claims, counterclaims and cross-claims in the consolidated cases, we believe two are critical at this juncture: (1) Is American Greetings obligated to deliver the Properties to MoonScoop free of Cookie's claims? (2) Will Cookie's claims to the Properties be eliminated if the sale to MoonScoop is concluded?[4]

Because discovery has not progressed significantly yet, the basis for American Greetings' defenses to enforcement of the BTS have not been uncovered in detail. However, based on interrogatory responses, it appears that American Greetings' principal defense is that MoonScoop did not tender payment of the purchase price as of the closing date, notwithstanding American Greetings' inability to deliver the Properties free of Cookie's claims. The relevant legal authorities overwhelmingly establish that a buyer seeking specific performance of a contract need not perform until the seller is able to provide the agreed consideration; it is enough that the buyer offer to perform with evidence of its ability to do so when the seller is able to do

---

[4] In particular, MoonScoop believes Cookie's claims against it are utterly without merit and ascribes no weight to them in its efforts to reach a settlement.

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v. American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017739

**HAHN LOESER**

Mr. Marvin L Karp
January 14, 2010
Page 5

so. *E.g., Resolution Trust Corp. v. York,* No. C-960180, 1997 Ohio App. LEXIS 628 (Ohio Ct. App. Feb. 26, 1997) *at* *5 ("[T]ender of performance is excused where it is clear to one party that the other party is unable to perform, as where there is an encumbrance upon the property which the [seller] is unable to remove" (citation omitted)); *McCarty v. Lingham,* 146 N.E. 64 (Ohio 1924) (tender of payment unnecessary where the seller's inability to provide marketable title constituted an anticipatory breach); *Restatement (Second) of Contracts § 238.* This is certainly why, in asserting its claims against Cookie, American Greetings has alleged that "American Greetings and MoonScoop were ready, willing, and able to close on the transaction set forth in the Binding Term Sheet by June 7, 2009 . . . ." (*See* American Greetings Answer to MoonScoop Complaint and Third-Party Complaint, ¶ 51.)

Although American Greetings has asserted additional defenses to enforcement of the BTS, it does not seem necessary to analyze them in this letter. For example, American Greetings claims that MoonScoop is not entitled to enforce the BTS because it did not provide American Greetings with written notice that it had obtained financing within 30 days after the BTS was signed (as provided in the BTS), when, at American Greetings' undeniable urging, the parties worked together to conclude the transaction right up to the weekend of closing. Any suggestion to the contrary is belied by American Greetings' own statements at the time. *See, e.g.,* Ex. C (June 9, 2009 e-mail from J. Mandelbaum to M. Leconey of UBS).

We believe there is a reasonable chance American Greetings' asserted defenses to enforcement of the BTS will be rejected on summary judgment.

Cookie's defense to being "dragged along" is apparently that its "match" rights require there be absolutely no difference whatsoever between the terms on which MoonScoop was to acquire the Properties and the terms afforded it by American Greetings.[5] Principally, Cookie contends that its "match rights" were violated because MoonScoop was permitted to close within 75 days of signing the BTS when American Greetings only agreed to allow Cookie to close within 30 days of exercising its match rights. This complaint is without merit in view of both the language of the relevant agreements and practical circumstances.

The specific language of the "match right" provides that "Cookie Jar shall have a right to match . . . any third-party offer for the Properties . . . ." (Ex. D at 7.) The Letter Agreement defines an "offer" to be "a binding term sheet fully executed and delivered during [the shop] period . . . ." *Id.* at 6. The written terms of the BTS provide that the transaction may close within 30 days of its execution, unless extended for up to 75 days *by mutual agreement.* Thus, Cookie's match right was exactly what the BTS provided: closing within 30 days. American Greetings was simply unwilling to extend that period for Cookie, and for good reason. First, American Greetings had reason to believe Cookie would not be able to secure financing, as it had been unable to do only months beforehand. Second, if American Greetings had voluntarily agreed to extend Cookie's closing date to 75 days, nobody would have committed to financing MoonScoop's purchase of the Properties because they would not devote the resources to the

---

[5] It is unclear where Cookie gets this definition from, as it is undefined in the Letter Agreement, but it is not from Webster's, whose definitions of the term include the following: "[A] person or thing equal *or similar to* another (emph. added)."

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v. American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017740

HAHN LOESER

Mr. Marvin L Karp
January 14, 2010
Page 6

necessary due diligence, nor would they set aside funds available to finance other transactions, on the contingency that Cookie would not be able to close the transaction.

Cookie has asserted a litany of additional reasons why it believes it was not afforded its "match" rights, but they are either so illogical or inconsequential that MoonScoop does not wish to waste your time addressing them in this letter.

In addition to the above issues pertaining to MoonScoop's right to obtain the Properties free of Cookie's claims, American Greetings has very recently committed an additional breach of the BTS that negatively affects MoonScoop's views on a potential settled resolution. The BTS requires American Greetings to indemnify MoonScoop for claims asserted in connection with the BTS, providing:

> If [MoonScoop] is named as a party in any claim or legal action arising from the purchase of the Properties and the claimant or claimants in such action assert that AG did not have the legal right to sell and transfer the Properties to MoonScoop, as provided herein, or such third party claims or actions otherwise arise as a result of the submission or execution of this Binding Term Sheet, then AG shall indemnify and defend [MoonScoop] against any costs, expenses and liabilities resulting from such claim or action . . . .

MoonScoop's U.S. affiliate MoonScoop LLC fka Mike Young Productions LLC ("MYP") is the beneficiary of an even broader indemnification provision in a work-for-hire agreement to provide technical animation services to American Greetings' subsidiary TCFC.

In a now-stayed case brought by Cookie in state court in New York, Cookie asserted various tort claims against American Greetings, MoonScoop and MYP arising out of the BTS. American Greetings indemnified MoonScoop and MYP in that case. Nevertheless, American Greetings now refuses to indemnify MoonScoop and MYP for identical claims asserted by Cookie in this case, and has provided no explanation for its refusal.

### MoonScoop's Goals For The Mediation And Its Willingness To Compromise

MoonScoop wants to acquire the Properties for the price the parties agreed to, provided that they have performed as well as expected since June 7, 2009. To reaffirm that it is ready, willing and able to acquire the Properties, MoonScoop has secured from GTCR a renewal of its commitment to finance the purchase. MoonScoop is likewise entitled to recover the revenues generated on the Properties since the June 7, 2009 closing date, which revenues are substantial.

In MoonScoop's view, the proper framework for a resolution with American Greetings is to place the parties in the positions they would have been in had the transaction closed on June 7, 2009 when it should have. To that end, MoonScoop is willing to pay an appropriate amount of interest on the purchase price, and to pay an appropriate management fee pertaining to the revenues on the Properties that have been generated since June 7, 2009. In addition, as mentioned above, MoonScoop's affiliate MYP is under contract to perform certain technical animation services for American Greetings related to the Properties under a work-for-hire

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.*,
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017741

**HAHN LOESER**

agreement. Since MoonScoop will have benefited from American Greetings' payment for those services when MoonScoop obtains the Properties, it would be appropriate for MoonScoop to reimburse American Greetings for some portion of the expenses associated with that agreement.

There is no logical reason for MoonScoop to reach any agreements with Cookie in connection with the mediation. MoonScoop has no contractual relationship with Cookie, American Greetings does, and it is American Greetings' problem that Cookie continues to assert rights in the Properties. However, depending on what transpires during the mediation, MoonScoop may be open to explore how it might help American Greetings try to resolve its issues with Cookie.

---

Joel Vaturi, a MoonScoop consultant and shareholder who was MoonScoop's key representative in the negotiations with American Greetings will also be attending, as will John Engelman, co-CEO of Classic, MoonScoop's partner in the transaction. I will be attending as well.

Please let me know if you would like any further information in advance of the mediation.

Sincerely,

*[signature]*

Michael J. Garvin

Enclosures

CLE - 2200956.2

Disclosed for exclusive use in
*MoonScoop SAS v.American Greetings Corp.,*
Case No. 09-CV-1885 (N.D. Ohio)

GTCR0017742