IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MOONSCOOP SAS, | CASE 1:09-CV-01885-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| v. | |
| AMERICAN GREETINGS CORPORATION, et al., | REPLY IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE REGARDING DAMAGES |
| Defendants. | |

MoonScoop is not entitled to specific performance in this case—and nothing in MoonScoop's Opposition to American Greeting's Motion in Limine Regarding Damages alters that conclusion. While MoonScoop attempts to confuse the analysis with a series of mischaracterizations of the unrebutted facts and misstatements about the applicable law, none of MoonScoop's arguments withstand scrutiny.

The analysis is actually simple and straightforward: (1) under Ohio law, the remedy for breach of contract is an award of monetary damages and (2) MoonScoop's damages are limited to the benefit of the bargain it would have received under the MoonScoop/Boomerang agreement. American Greetings submits this reply to clarify a number of critical factual and legal points that were misstated and/or overstated in MoonScoop's opposition.

A.  **The "Enforcement" Clause in the Contract Does not Alter MoonScoop's Burden to Prove that Monetary Damages are an Inadequate Remedy.**

MoonScoop first argues that the "enforcement" clause at page 7 of the March 24, 2009 term sheet somehow trumps the applicable law.  This is not the case, as the parties cannot dictate to the Court a remedy that is contrary to law.  *DVD Copy Control Association, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 726 (6th District, 2009) ("[A] court must reject a stipulation contemplating an equitable remedy that is contrary to law or public policy, such as where evidence shows that an aggrieved party actually has an adequate remedy at law."); *accord Smith, Bucklin & Assocs. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) (rejecting contractual stipulation of irreparable harm and denying injunctive relief because "[a]ny damage that has occurred can be adequately compensated at law"); *Ed Bertholet & Assocs. v. Stefanko*, 690 N.E.2d 361, 364 (Ind. Ct. App. 1998) (holding that "contract provisions requiring the issuance of an injunction are *not* binding upon the trial court" and denying injunctive relief "because an adequate remedy of law exists").

As explained in American Greetings' motion and initial brief, Ohio law is clear that "[s]pecific performance is only available when there is no adequate remedy at law." *Gleason v. Gleason*, 64 Ohio App. 3d 667, 672 (4th Dist. 1991).  "Before a court may grant the remedy of specific performance of a contract, it must find that the party requesting such equitable relief has no adequate remedy at law." *Cochran v. Hamilton*, No. 83-1113, 1985 Ohio App. LEXIS 5675, *2 (2nd Dist. Jan. 11, 1985).

Accordingly, regardless of this clause in the parties' contract, MoonScoop still must prove that it has no adequate remedy at law in order to have a potential claim for specific performance.  Indeed, MoonScoop cites no cases where a court ordered specific

performance without the plaintiff sustaining its burden of showing that it had no adequate remedy at law, regardless of any enforcement clause in the parties' contract.[1]

**B.     MoonScoop's Effort To Claim An Ongoing "Equity" Interest in the Properties Fails, As MoonScoop Was Indisputably Required To Transfer All Right, Title, and Interest in the Properties to Boomerang Media.**

The evidence in this case is undisputed that, had the terms of the March 24, 2009 binding term sheet been consummated, MoonScoop would have been required immediately to transfer all right, title, and interest in the Properties to Boomerang Media. MoonScoop's June 7, 2009 Agreement with Boomerang Media, Inc.[2] makes absolutely clear, on the very first page, that:

> MoonScoop agrees that **upon acquiring the Properties** from AG pursuant to the Binding Term Sheet, **MoonScoop will transfer *all of its right, title and interest in the Properties*** (or as the Buyer pursuant to any purchase agreement it may enter into with respect to the Properties) to Classic or one of Classic's affiliates.

*See* June 7, 2009 MoonScoop/Boomerang Agreement (attached as Exhibit C to American Greetings Memorandum in Support) (emphasis supplied). MoonScoop is not being straight with this Court in attempting to characterize this arrangement as merely equity financing, and that MoonScoop would retain some ownership of the Properties.

MoonScoop's strained argument that in the future it would have obtained a small equity stake in the Properties at some unspecified time after it "transfer[ed] all of its right, title and interest in the Properties" to Boomerang under a potential restructuring of the Mike

---

[1] The only case cited in this section of MoonScoop's brief, *TLC Health Care Servs. LLC v. Enhanced Billing Servs. LLC*, No. L-08-1121, 2008 Ohio App. LEXIS 3591 (6th Dist. Aug. 22, 2008), has nothing to do with specific performance or equitable relief, and merely stands for the uncontested proposition that parties can limit the type and amount of damages available from a business relationship.

[2] In the title of the Boomerang-MoonScoop agreement, it states that Boomerang will be referred to as "Classic."

Young Productions work-for-hire agreement is tenuous at best, and based on a gross overstatement of the record.

Not only had no such deal been reached between MoonScoop and Boomerang, but readily admits that the terms of any potential agreement had not even been discussed. See Ellenbogen Dep. 73-74; Engelman Dep. 152. Indeed, one of Boomerang's principals expressly admitted that MoonScoop would not obtain any ownership in the Properties to be purchased under the March 24, 2009 Term Sheet. Engelman Dep. 53, lns. 10-17 (Q: You [Boomerang] would have the ownership of the property? A: We would have the underlying copyrights in the properties. Q: Copyrights, trademarks? A: Correct. Q: all of the ownership interest, correct? A: Correct).

Moreover, the only other co-production agreement between MoonScoop and Boomerang—involving "Casper, the Friendly Ghost"—did not provide MoonScoop with any ownership interest in the underlying "Casper" intellectual property, but only an interest in the videos produced by MoonScoop under that deal plus certain licensing rights, all of which are quantifiable in damages at law. See Engelman Dep. 156.

**C.    Even If MoonScoop Would Have Ended Up With Some "Equity" Interest in the Properties, Specific Performance Is Still Unavailable Under Ohio Law.**

Even if MoonScoop were to have obtained a limited equity interest in the right and title to the Properties themselves (which American Greetings vigorously disputes), specific performance is simply not an available remedy to MoonScoop under Ohio law on these facts. MoonScoop admits that it can calculate its alleged monetary damages, but still argues that it is entitled to specific performance because the Properties are "unique." This is not the law.

4

Indeed, the cases on which MoonScoop relies in attempted support of its position -- most of which are patent rather than copyright cases -- are wholly distinguishable.  For example, the primary case on which MoonScoop relies actually *supports* American Greetings' position.  In *Tom Doherty Assocs. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995), the Second Circuit affirmed an injunction where plaintiff met its extremely high burden of showing irreparable harm by demonstrating that "the value of a Power Rangers' book to [plaintiff's] fortunes as a children's publisher is beyond ready calculation."  *Id.* at 38.  The Second Circuit specifically found that the plaintiff's *opportunity* to use the intellectual property was unique and its loss was not compensable through monetary damages because the plaintiff planned to use the Power Rangers intellectual property *to establish itself in the children's book market.  Id.* (finding that the licensing opportunity "is a wholly unique opportunity, and the amount of damages—in particular, the loss of prospective business from additional children's authors or owners of characters—will be largely indeterminate if the opportunity is denied.").

The situation here is drastically different:  MoonScoop is already established in the children's entertainment market, and has admitted not only that it can calculate its damages but that it can do so "with a great deal of precision."

**D.     MoonScoop Cannot Reset the Purchase Price With Its Claimed "Allowances" for the Passage of Time.**

Even if specific performance was a viable remedy, MoonScoop misstates the law regarding the purchase price.  As set out in American Greetings' motion in limine, "it is well established that the purpose of damages for breach of contract is to restore the benefit of the bargain to the plaintiff by placing the plaintiff in the position he or she would have been

5

in had defendant performed the contract." *James v. Sky Bank*, 2012 Ohio App. LEXIS 3430, *11 (11th Dist. Aug. 27, 2012) (internal citation omitted). However, it is equally well-established that "a party should not be placed in a better position than if the contract had not been breached." *Victorian Room Banquet Ctr. v. Bernard*, 2006 Ohio App. LEXIS 4881, *5 (11th Dist. Sept. 22, 2006); *see also Brads v. First Baptist Church of Germantown, Ohio*, 89 Ohio App. 3d 328, 339 (2nd Dist. 1993) (a plaintiff "is not entitled to be placed in a *better* position than he would have been in had the breach not occurred."). Further, "damages are to be compensatory in nature and not punitive." *Victorian Room Banquet Ctr.*, 2006 Ohio App. LEXIS 4881 at *5.

MoonScoop flatly ignores this law in its opposition by arguing for a series of hopelessly complicated "allowances" for the "passage of time," including disgorgement of American Greetings' profits related to the Properties, credits for money that American Greetings spent on outside production involving the Properties, and adjustments for decline in value of the Properties. Even putting aside the practical implications of MoonScoop's requested "allowances" (including the need for serial evidentiary hearings and ongoing judicial oversight), there is absolutely no factual or legal basis for MoonScoop's position that it is entitled to any allowances, much less allowances that would put MoonScoop in a better position and American Greetings in a worse position than if the parties' agreement had been consummated.

While MoonScoop is correct that some Ohio courts have ordered both specific performance and damages to a plaintiff who was denied the use of real property, MoonScoop fails to acknowledge that such equitable accounting is not designed to benefit only the plaintiff—instead, the court must place *both parties* in the position they would have

6

been had the contract been performed. Indeed, in a case cited by MoonScoop, the Supreme Court of Ohio held that both the purchaser and the seller of property may be entitled to setoffs or abatements in specific performance cases, if such setoffs or abatements are necessary to put *both* parties "as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract." *Sandusky Properties v. Aveni*, 15 Ohio St. 3d 273, (1984) (emphasis added; citations and quotations omitted).

To apply equity in such a way here, the Court would have to offset any claim by MoonScoop against the loss to American Greetings of not having the benefit of the $76,000,000 net purchase price (after paying 20% to Cookie Jar), which American Greetings intended to use in its stock buy-back program at a stock price of about one-third of today's price. Weiss Dep. 173-174. This loss alone to American Greetings is significantly larger than all of MoonScoop's alleged losses. Another example is that American Greetings would have also saved the approximate $20 million it has paid to Mike Young Productions under the work-for-hire agreement.

As set out in American Greetings' motion in limine, the only "benefit of the bargain" that MoonScoop would have obtained if the parties' agreement had come to fruition is the consideration that MoonScoop would have received under the MoonScoop/Boomerang agreement. Even if MoonScoop is entitled to recover that amount, it certainly is not entitled to recover more. Nor can the Court unfairly penalize American Greetings by ordering it to disgorge profits or provide credits.

**E.     Boomerang/Classic is Not a Third Party Beneficiary.**

Incredibly, MoonScoop also argues that not only is it entitled to specific performance and damages on its own behalf, but also that it is entitled to recover "expectancy damages" on behalf of Boomerang/Classic.  MoonScoop could not be further off the mark.

"Ohio courts have defined a third party beneficiary as one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise." *Tolbert v. Coast to Coast Dealer Servs.*, 789 F. Supp. 2d 811, 817 (N.D. Ohio 2011). "Only a party to a contract or an **intended** third-party beneficiary of a contract may bring an action on a contract in Ohio." *Thorton v. Windsor Homes, Inc.*, 57 Ohio St. 158, 161 (1991) (emphasis added). "A third person who is only **indirectly and incidentally** benefited by a contract has no right of action thereon." *Blunck*, Syllabus, at ***8 (emphasis added).

Under long standing Ohio law, an intended third party beneficiary is limited to an entity that the promissee (here, American Greetings) intended to directly benefit when it entered into the agreement at issue:

> An intended beneficiary is one who has enforceable rights under the contract, in contrast to an incidental beneficiary who has no rights of enforcement.  To be an intended beneficiary, the contract must be entered into with the intent to benefit that person.  If the [defendant] did not intend to benefit plaintiff, he is an incidental beneficiary with no enforceable rights under the contract.  The mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract is insufficient; rather the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.

*Berge v. Columbus Community Cable Access*, 136 Ohio App. 3d 281, 303 (1999).

To determine whether a third party is an "intended beneficiary" under a contract, Ohio courts first look to the language of the contract: "Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." *Huff*,

8

130 Ohio St. 3d at 200. Extrinsic evidence will be considered only in limited circumstances: "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intention." *Id.*

Boomerang/Classic obviously does not even come close to qualifying as a third party beneficiary under the terms of the March 24, 2009 Term Sheet. In fact, at the time the parties executed the March 24, 2009 Term Sheet, neither party contemplated that any third party would have a direct interest in the Agreement, as the term sheet expressly prevents MoonScoop from transferring any interest in the Properties to any third party prior to closing.

MoonScoop was only permitted to deal with third parties who would provide debt or equity financing, and there was no anticipation that any such third party would benefit directly from the term sheet. *See Banco Del Estado v. Navistar International*, 954 F.Supp. 1275 (N.D. Ill. 1997) (by their nature, even secured lenders are not third party beneficiaries). Under MoonScoop's view of the law, every bank that makes a loan to a buyer would have the right to enforce the underlying contract. That is <u>not</u> the law. Further, MoonScoop has never identified Boomerang/Classic as a third party beneficiary—in any of its complaints or otherwise. In short, Boomerang/Classic has no standing here -- not directly, nor indirectly through MoonScoop.

Respectfully submitted,

s/ *Damond R. Mace*
Damond R. Mace (0017102)
*damond.mace@squiresanders.com*
Steven A. Friedman (0060001)
*steven.friedman@squiresanders.com*
SQUIRE SANDERS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Phone:  (216) 479-8500
Fax:  (216) 479-8780

Attorneys for American Greetings Corporation